# In the United States Court of Federal Claims

| | | |
|---|---|---|
| **ADVANCED LOGIC RESOURCES, INCORPORATED,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-531C** |
| | ) | **Judge Robert H. Hodges, Jr.** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

AMENDED COMPLAINT ON AN
EXPRESS CONTRACT CLAIM

NATURE OF THE ACTION

1. Plaintiff Advanced Logic Resources, Incorporated, 244 Mill Road, Yaphank, New York 11980-9783 (Advanced Logic Resources) files this Amended Complaint in accordance with RCFC 15(a). Advanced Logic Resources seeks declaratory relief and a money judgment under the Contract Disputes Act, 41 U.S.C. § 609(a)(1), and under the Federal Courts Administration Act of 1992, 28 U.S.C. §§ 1491(a)(1), 1491(a)(2). Plaintiff challenges a final decision of a Defense Information Technology Contracting Organization Contracting Officer on May 22nd, 2006, 41 U.S.C. § 605(a), a final deci-

sion denying a properly-certified Quantum Claim by Advanced Logic Resources for $138,000,000 in money damages arising by reason of material breaches by the Defense Information Systems Agency and other Department of Defense Agencies under Contract Number DCA200-94-H-0015. The Defense Information Technology Contracting Organization Contracting Officer acknowledges receipt of Advanced Logic Resources' properly-certified Quantum Claim on February 24th, 2006. The Defense Information Technology Organization Contracting Officer denies that Defendants are in material breach: "the Government has complied with the terms of the License Agreement, and ALR is not entitled to compensation." Plaintiff asserts: (1) that Contract Number DCA200-94-H-0015 was breached when Defendants allowed Department of Defense contractors to conduct electronic business with the Department of Defense other than through one of the thirty-one signatories (the Value-Added Networks (VANs)) to Contract Number DCA200-94-H-0015; (2) that Contract Number DCA200-94-H-0015 was breached when Defendants allowed Department of Defense contractors registering to conduct electronic business with the Department of Defense to do so other than through one of the thirty-one signatories to Contract Number DCA200-94-H-0015; (3) that Contract Number DCA200-94-H-0015 was breached

when Defendants allowed Department of Defense contractors to conduct electronic business with the Department of Defense without first registering to do so; (4) that Contract Number DCA200-94-H-0015 was breached when Defendants temporarily suspended the means to register Department of Defense contractors desiring to conduct electronic business; (5) that Contract Number DCA200-94-H-0015 was breached when Defendants abandoned Contract Number DCA200-94-H-0015 in March 1997 and commenced implementation of an alternative to the system of electronic commerce established by Contract Number DCA200-94-H-0015; (6) that Contract Number DCA200-94-H-0015 was breached when Defendants failed to meet the twenty-four month Implementation Plan established for Contract Number DCA200-94-H-0015; and (7) that Contract Number DCA200-94-H-0015 was breached when Defendants failed to meet the Implementation Plan requiring that testing and certification of VANs would be available by April 5th, 1994. By reason of these material breaches of Contract Number DCA200-94-H-0015, Plaintiff asserts: (1) that Plaintiff realized a gross income of only $51,255 during the period February 3rd, 1995 through December 31st, 1995; a gross income of only $88,206 in calendar year 1996; and a gross income of only $82,557 during the period January 1st, 1997 through September 17th, 1997; (2)

that Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $52,621,151 during the period February 3rd, 1995 through December 31st, 1995, and an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $46,277,505 in calendar year 1996; and (4) that Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $29,049,246 during the period January 1st, 1997 through September 17th, 1997. Plaintiff Claims an award of money damages, these based on lost profits on an expectancy of an estimated 300,000 vendors interested in conducting electronic business with the Department of Defense, of $138,000,000 for the period February 3rd, 1995 through September 17th, 1997. Or Plaintiff Claims an award of money damages, these based on lost profits on Plaintiff's share of the 124,265 actual vendors whose electronic business with Defendants was diverted to the Bulletin Boards, of $57,157,696 for the same period, February 3rd, 1995 through September 17th, 1997. Alternatively, Plaintiff Claims a fair and reasonable approximation of money damages as determined under the jury verdict method, this also to be awarded as a money judgment.

## PARTIES

2. Advanced Logic Resources is a for-profit New York corporation. Advanced Logic Resources is the awardee of Contract Number DCA200-94-H-0015, and thus a proper "Contractor" under the Contract Disputes Act, 41 U.S.C. § 601(4). Contract Number DCA200-94-H-0015 became effective on February 3rd, 1995 when it was counter-signed by a Contracting Officer at the Defense Information Technology Contracting Organization, a field activity of the Defense Information Systems Agency. Advanced Logic Resources is a proper party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B)(ii), i.e., Advanced Logic Resources is a private party and a corporation which at the time this Civil Action is filed has not more than 500 employees and whose net worth does not exceed $7,000,000. Defense Information Systems Agency is a United States Department of Defense agency. Defendants Defense Information Technology Contracting Organization, Defense Information Systems Agency, and the United States Department of Defense are agencies and entities of the United States, and the United States Department of Defense is a proper "Executive Agency" under the Contract Disputes Act, 41 U.S.C. § 601(2). Contract Number DCA200-94-H-0015 is an express License Agreement giving Advanced Logic Resour-

ces and some few others the exclusive right to transmit United States Department of Defense electronic business transactions, an express License Agreement entered into by an Executive Agency for the procurement of services, and thus an Executive Agency Contract to which the Contract Disputes Act applies, 41 U.S.C. § 602(a)(1). Defendants Defense Information Technology Contracting Organization, Defense Information Systems Agency, and the United States Department of Defense are hereinafter referred to, collectively, as "the Defendant."

JURISDICTION

3. This Court has jurisdiction under 28 U.S.C. § 1491(a)(1), 28 U.S.C. § 1491(a)-(2), and 41 U.S.C. § 609(a)(1). The decision by the Defense Information Technology Contracting Organization Contracting Officer on May 22nd, 2006 denying a properly-certified Quantum Claim by Advanced Logic Resources is sufficiently final for the purposes of the Contract Disputes Act, 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."), is sufficiently final under 28 U.S.C. § 1491(a)(1) for this Civil Action seeking a money judgment (It is a "claim against the United States founded . . . upon any express . . . contract with the United States."), and

is sufficiently final under 28 U.S.C. § 1491(a)(2) for this Civil Action seeking declaratory relief because this Civil Action arises, literally, from "a nonmonetary [dispute] on which a decision of the contracting officer has been issued . . . ." *Record Steel and Construction, Inc. v. United States*, 62 Fed. Cl. 508, 520 (2004).

4. This Civil Action is timely filed. Advanced Logic Resources received the final decision of the Defense Information Technology Contracting Organization Contracting Officer denying Advanced Logic Resource's properly-certified Quantum Claim on the day after it was issued, May 23rd, 2006, and this Civil Action is filed within one year from that date, 41 U.S.C. § 609(a)(3).

5. Advanced Logic Resources submitted a timely Entitlement Claim under Contract Number DCA200-94-H-0015 to a Defense Information Technology Contracting Organization Contracting Officer on July 21st, 1999, and the Defense Information Technology Contracting Organization Contracting Officer denied this Entitlement Claim on October 25th, 1999. Advanced Logic Resources timely appealed to the Armed Services Board of Contract Appeals on December 13th, 1999; this Appeal was docketed before the Armed Services Board of Contract Appeals as ASBCA No. 52467. The parties agreed to bifurcate Entitlement and Quantum and to suspend proceedings un-

der this Appeal pending resolution of Entitlement in another case, *GAP Instrument Corp*., ASBCA No. 51658, an Appeal likewise arising under Contract Number DCA-200-94-H-0015, and an Appeal where Entitlement and Quantum were likewise bifurcated.

6. In its Decision of March 22nd, 2001 on GAP Instrument's Entitlement Claim, the Armed Services Board of Contract Appeals found that Defendants had violated the Exclusivity provision of Contract Number DCA200-94-H-0015; that these violations were material breaches, *GAP Instrument*, 2001 ASBCA LEXIS 47 *30-*31; and that this Exclusivity provision "had business value, because appellant could charge fees to contractors which, had the Government kept its promise, would have had no choice but to use the services of the little coterie of VAN providers of which appellant was a member," *GAP Instrument*, 2001 ASBCA LEXIS 47 *32-*33.

7. The Defense Information Technology Contracting Organization Contracting Officer contends, in her final decision of May 22nd, 2006 denying a properly-certified Quantum Claim by Advanced Logic Resources that this Quantum Claim has replaced and superseded Advanced Logic Resources' Entitlement Claim of 1999.

8. Assuming, but only for the purposes of argument, that the Advanced Logic Resources Quantum Claim has replaced and superseded Advanced Logic Resources' Entitlement Claim of 1999, then the Advanced Logic Resources Quantum Claim is properly now before the Court. Advanced Logic Resources' Quantum Claim could have arisen no earlier than March 22nd, 2001, the date the Armed Services Board of Contract Appeals issued its Decision in *GAP Instrument*, 2001 ASBCA LEXIS 47 *33. Federal Acquisition Regulation 33.201 defines "Accrual of a claim" as follows:

> "Accrual of a claim" means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

Federal Acquisition Regulation 33.201. The Armed Services Board of Contract Appeal's Decision of March 22nd, 2001 in *GAP Instrument*, 2001 ASBCA LEXIS 47 *33 was the first date on which Defendants: (1) were found to have violated the Exclusivity provision of Contract Number DCA200-94-H-0015; (2) that these violations were material breaches, *GAP Instrument*, 2001 ASBCA LEXIS 47 *30-*31; (3) that the Exclusivity provision "had business value, because appellant could charge fees to contractors which, had the Government kept its promise, would have had no

choice but to use the services of the little coterie of VAN providers of which appellant was a member," *GAP Instrument*, 2001 ASBCA LEXIS 47 *32-*33; and (4) that GAP Instrument (and the other thirty signatories of Contract Number DCA200-94-H-0015) had incurred some injury (damage), *GAP Instrument*, 2001 ASBCA LEXIS 47 *33.

9. The Contract Disputes Act, 41 U.S.C. § 605(a), requires that "claim[s] by a contractor against the government relating to a contract . . . shall be submitted within 6 years after accrual of the claim." Here, the Defense Information Technology Contracting Organization Contracting Officer has acknowledged receipt of the Advanced Logic Resources Quantum Claim as of February 24th, 2006, well within six years after the Armed Services Board of Contract Appeal's Decision of March 22nd, 2001, the earliest date on which the Advanced Logic Resources Quantum Claim can be found to have accrued in favor of Advanced Logic Resources. And because Advanced Logic Resources received the final decision of the Defense Information Technology Contracting Organization Contracting Officer denying Advanced Logic Resource's properly-certified Quantum Claim on the day after it was issued, May 23rd, 2006, this Civil Action is timely filed within one year from that date, 41 U.S.C. § 609(a)(3).

## AVERMENTS

The Process Access Team Report.

10. On December 20th, 1993 the Department of Defense Electronic Commerce in Contracting Process Access Team (PAT) issued its comprehensive plan for implementing electronic commerce throughout the Department of Defense. This plan was for the migration of the various electronic procurement systems in use by Department of Defense agencies and for the deployment of electronic procurement capabilities at new sites, all gathered together into a single system. The comprehensive plan provided for just two Department of Defense "hubs" (computer-based facilities that would present a centralized interface). The PAT Report was approved on January 5th, 1994.

11. The PAT Report estimated that over 300,000 vendors were interested in conducting electronic business with the Department of Defense. Likewise, the PAT Report explained that an actual 124,265 Department of Defense vendors were already being served by four Department of Defense electronic procurement systems: the Department of the Navy's Automation of Procurement and Accounting Data Entry (APADE) and Integrated Technical Item Management Procurement (ITIMP) systems; the Department of the Air Force's Menu Assisted Data Entry System (MADES);

the Department of the Army's Standard Automated Contracting System (SACONS); and the Defense Logistics Agency's Standard Automated Material Management System Procurement by Electronic Data Exchange (SPEDE). The comprehensive plan announced in the PAT Report encompassed small purchase contract actions, i.e., purchase orders, delivery orders, and modifications valued at $25,000 or less. The PAT Report observed that the annual service fees charged vendors for access to just one of the existing Department of Defense electronic procurement systems were $720. With an anticipated market of an estimated 300,000 vendors, this amounts to potential income of $216 million per year to be shared by the thirty-one VANs to be given exclusive access to Department of Defense electronic commerce for small purchase contract actions. For the existing market of 124,265 actual vendors, this amounts to potential income of $89,470,800 per year, this likewise to be shared by the thirty-one VANs to be given exclusive access to Department of Defense electronic commerce for small purchase contract actions.

12. During its Fiscal Year ended September 30th, 1992, approximately ninety-eight percent of Department of Defense contract actions, or 11.851 million contract actions, were for $25,000 or less. These small purchase contract actions consisted of three typ-

es: purchase orders, delivery orders, and modifications. In Fiscal Year 1992, six million small purchase contract actions were purchase orders, and the rest were delivery orders or modifications. The PAT Report estimated that eighty percent of these small purchase contract actions ($25,000 or less) "could be accomplished through current EDI [electronic data interchange] technologies and methods . . . ." The Department of Defense sites where electronic commerce would be implemented, else consolidated, into two hubs each had a volume of more than 10,000 small purchase contract actions per year, and these Department of Defense sites processed more than eighty percent of all small purchase actions. Thus the Department of Defense supposed that these Department of Defense sites would annually process 9.48 million electronic small purchase contract actions. In Fiscal Year 1992, the Department of Defense spent $14.8 billion on those 11.851 million small purchase contract actions. Thus the expected annual dollar volume of electronic small purchase contract actions was eighty percent of $14.8 billion, or $11.84 billion. The small purchase ceiling was then expected to increase from $25,000 to $100,000, thereby increasing in future years both the available number of electronic small purchase contract actions and their total dollar value, and in fact the small purchase ceiling was increased to $100,000 on October 13th, 1994 with

enactment of the Federal Acquisition Streamlining Act of 1994, 10 U.S.C. § 2302a, 41 U.S.C. § 403(11). The Federal Acquisition Streamlining Act mandated the creation of the Federal Acquisition Network (FACNET), and FACNET was to provide the infrastructure to support Government-wide implementation of electronic commerce/electronic data interchange. Defendants were made responsible for the implementation of this infrastructure.

13. The PAT Report provided up to a ninety-day lead time to begin the consolidation of existing Department of Defense electronic procurement systems and the expansion of these existing systems into a final system of 208 Department of Defense sites. Given the date of approval of the PAT Report (January 4th, 1994), the two-year Implementation Plan set out in the PAT Report was to begin on April 5th, 1994 and was to be completed on April 4th, 1996. The Implementation Plan in the PAT Report proposed to deliver consolidated electronic commerce at 113 sites in six months after April 5th, 1994, and to have a total of 208 sites in an integrated system of electronic commerce by April 4th, 1996. The Implementation Plan in the PAT Report likewise promised that testing and certification for VANs would become available within no

more than ninety days after approval of the PAT Report, or likewise on or before April 5th, 1994.

14. The PAT Report announced the implementation of a "single face to industry":

> A "single face to industry" is defined as performance of EC [electronic commerce] by the Government using EDI [electronic data interchange] in accordance with federal information processing standards and a common set of business practices and operational principles. It must be a solution which allows the vendor to be able to process the transaction to and/or from any DoD activity, minimally subscribe to one VAN to do business with all DoD, and register only once to become a DoD supplier (rather than with each DoD component/activity).

<u>The License Agreement</u>.

15. Plaintiff signed its copy of Contract Number DCA200-94-H-0015 on December 9th, 1994. Plaintiff's Contract Number DCA200-94-H-0015 became effective on February 3rd, 1995 when it was counter-signed by a Contracting Officer at the Defense Information Technology Contracting Organization.

16. Contract Number DCA200-94-H-0015 provided, *inter alia*:

> The EDI VAN Provider hereby provides the Government with the right to have access to the use of its EDI and Value-Added Network Services at no-cost to the Government for the purpose of exchanging business documents and information with individuals and organizations conducting business with the Government throughout the DOD Hub Gateway Computers. The network charges that would otherwise be applicable to the Government, for

transmission of documents in an electronic format will be waived for the duration of the license agreement. In consideration for the EDI VAN Provider granting the Government this right, the Government agrees that it will not use, resell, or otherwise make available Contractor's services outside the scope of this agreement without the prior written permission of the EDI VAN Provider.

Article 1. License Grant.

The license hereby granted may terminate in whole or in part, by giving the EDI VAN provider or Contracting Officer not less than thirty (30) calendar days notice in writing of the date such termination is to be effective.

The term of this agreement shall be for one year. The agreement may be extended for four one-year periods after the Government conducts an annual review of the agreement. . . .

Revisions to the License Agreement shall be made unilaterally by the Government. Any changes made to the Agreement, its Technical Scope of Work or Addendum A will apply to all signers of the Agreement, i.e., all participating EDI VAN Providers.

Article 2. License Term.

In consideration for the Electronic Data Interchange (EDI) Value Added Network (VAN) provided by the EDI VAN provider and the access to the DOD Hubs located at up to two locations for operations and disaster recovery purposes, provided by the Government, as described in the Technical Scope of Work, there will be no monetary charge to either party. *Sole consideration shall be the EDI VAN services provided by the EDI VAN provider and access to the DOD data provided by the DOD Hubs.*

Article 3. Payment. (Emphasis added.)

. . . .

> This license agreement provides for EDI VAN Provider access to the EC data provided as described in the Technical Scope of Work. *The DOD Hubs will provide DOD transactions offered under this agreement only to VANs signing this agreement. DOD will not provide these transactions to VANs under other agreements. This license agreement shall be used exclusively for obtaining access to the EC Data provided by the DOD Hubs computer during the term of this agreement.*

Article 7. Exclusivity. (Emphasis added.)

> This agreement shall be effective the date Government signs the agreement and shall continue unless sooner terminated in accordance with the provisions of this agreement. The total duration of this License Agreement shall not exceed 60 months (one basic year with four one-year periods).

Article 8. Extend Term of Agreement.

> The magnitude of DOD transactions depends on Congressional appropriations. Therefore, DOD cannot guarantee any minimal level transactions activity at any of its facilities.

Article 9. Minimum Guarantee.

. . . .

> The License Agreement is for use by both DOD and non-DOD Agencies.

Article 11. Use of License Agreement.

17. Contract Number DCA200-94-H-0015 incorporated by reference, at Article 12. Clauses Incorporated by Reference, the Disputes clause of December 1991. Subparagraph (a) of this Disputes clause provides: "This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613)."

18. Contract Number DCA200-94-H-0015 included a Technical Scope of Work, and this Technical Scope of Work provided, *inter alia*:

> Services as specified in the addendum(s) may begin after successful testing of the following: (1) connectivity between the EDI VAN Provider and the Hubs' Computers; (2) compliance with the relevant enveloping and transaction standards; and (3) other requirements in this agreement. Testing will commence after the DoD Technical Representative has informed the EDI VAN Provider that DoD is ready and the EDI VAN Provider responds that is [sic] ready. . . .

K. Testing and Initiation of Services.

. . . .

> All DoD-to-contractor transactions electronically exchanged as part of this EC program must be exchanged via a participating EDI VAN Provider. EDI VAN Providers participating in this agreement will be notified of the schedule of implementation of DoD activities in this EC program. *DoD activities will be phased into this program in accordance with a DoD-wide plan.* Electronic exchanges between DoD activities will not be conducted under this Agreement.

N. Other Considerations. (Emphasis added.)

19. Contract Number DCA200-94-H-0015 included an Addendum A, and this Addendum A provided, *inter alia*:

> *EDI-capable DoD activities will be phased into using this approach based on a DoD-wide implementation plan.*
>
> Requests for quotations (RFQs) will be issued by DoD activities, quotes will be sent by interested contractors to these activities, and the activities will make awards. All electronic transactions will be exchanged via the multi-VAN DoD Hubs. All contractors will send and receive transactions via one of the participating EDI VAN Providers.
>
> *Before conducting electronic commerce with DoD, all contractors must register using a simple electronic registration transaction sent to DoD via a participating EDI VAN Provider.*

1. Overview. (Emphasis added.)

> *DoD will require all contractors desiring to electronically conduct business to only do so with a participating, fully tested EDI VAN Provider.* Any contractor may also exchange transactions by other means (i.e., not electronic) in accordance with the FAR and other applicable regulations. *DoD will require registered vendors to exchange all electronic transactions via a participating EDI VAN Provider. DoD activities participating in this approach will be phased into it in accordance with a DoD-wide implementation plan.*

2.1. Contractor Use of VAN Services. (Emphasis added.)

> *All contractors must register with DoD to conduct business with DoD activities using the DoD-wide approach to electronic commerce* described in this Addendum.

4. Vendor Registration Information and Capabilities. (Emphasis added.)

> The EDI VAN Provider must directly or indirectly provide any interested subscriber the capability to complete the registration transaction set. The transaction set will be the ASC X12 838 transaction set following the DoD implementation conventions. The DoD expects the EDI VAN Provider to enable subscribers to conduct these four steps easily, preferably using electronic mail or similar electronic means.

4.4 Registration Transaction.

Defendants' Breaches of the License Agreement.

20. One Department of Defense component, the Defense Logistics Agency, had about fifty percent of all available Department of Defense small purchase contract actions. Defense Logistics Agency never made use of the Department of Defense hubs to present and exchange electronic small purchase contract actions. Instead, Defense Logistics Agency operated its own point-to-point electronic data interchange network, SPEDE, between its procurement centers and vendors interested in doing electronic business with the Department of Defense. Likewise, the Department of the Navy used its APADE and ITIMP electronic procurement systems to operate its own electronic data interchange network for exchange of electronic procurement transactions.

21. A "Bulletin Board" is an electronic commerce/electronic data interchange system. A Bulletin Board consists of a computer equipped with a modem and communication software that enables Defendants and vendors to exchange electronic small purchase contract information, and electronic bids, through telephone lines. There were nineteen such Bulletin Boards within the existing Department of Defense electronic procurement systems, i.e., APADE, ITIMP, MADES, SACONS, and SPEDE. These Bulletin Boards were operated by seven Commands within the Department of the Army (Aviation Command, Communications-Electronics Command, Industrial Operations Command, Information Systems Command, Missile Command, Simulation Training Instrumentation Command, and Tank-Automotive and Armament Command), and by the Army's Medical Federated Laboratory; by four Fleet and Industrial Supply Centers within the Department of the Navy (Jacksonville, Florida; Norfolk, Virginia; Puget Sound, Washington; and San Diego, California), and by the Naval Air Warfare Center Aircraft Division, the Naval Information Systems Management Center, and the Space and Naval Warfare Systems Command; and by four Defense Logistics Agency procurement centers (Defense Construction Supply Center, Columbus, Ohio; Defense Electronics Supply Center, Dayton, Ohio; Defense General

Supply Center, Richmond, Virginia; and Defense Industrial Supply Center, Philadelphia, Pennsylvania). These Bulletin Boards were a diversion of the electronic business of 124,265 actual vendors that otherwise would have been conducted through the thirty-one VANs. On information and belief, Defendants allowed this diversion of the electronic business of 124,265 actual vendors that otherwise would have been conducted through the thirty-one VANs because full implementation of the License Agreement and FACNET (of which the License Agreement was a part after enactment of the Federal Acquisition Streamlining Act) was perceived as a threat to the continued employment of many of Defendants' acquisition personnel.

22. One feature of Defendants' comprehensive plan for implementing electronic commerce throughout the Department of Defense was establishment of a centralized database, the Central Contractor Registration (CCR) database, so that a vendor need only register once, and having done so, this vendor could access and respond to electronic small purchase contract opportunities from any Department of Defense component. The CCR database was, per a memorandum signed by President William Jefferson Clinton on October 26th, 1993 to be fully operational by July 1995. By June 1996 implementation of the CCR database was one year behind schedule. Among oth-

er things, this delay in implementation of the CCR database resulted from Defendants' redesign of the CCR database to accommodate FACNET. Through October 1996 only about 4,000 of the estimated 300,000 vendors interested in conducting electronic business with the Department of Defense had registered in the CCR database. This resulted in Defendants establishing a World Wide Web site and dial-up modem capability that allowed vendors to directly register in the CCR database without going through one of the thirty-one VANs. Another consequence of this dearth of registrations was that Department of Defense components were compelled to electronically award small purchase contracts to unregistered vendors.

23. During the period beginning in 1995 through October 1996, Defendants closed access to the CCR database while the CCR database was redesigned to accommodate FACNET.

24. By June 1997 there were still less than 9,000 vendors registered in the CCR database. Defendants then proposed that vendors must register in the CCR database as a condition of receiving electronic small purchase contract actions after March 31st, 1998. Finally, Defendants ordered in mid-1998 that vendors must register in the CCR

database as a precondition to payment. This order resulted in some 150,000 CCR database registrations.

25. Defendants effectively abandoned Contract Number DCA200-94-H-0015 and the promised "single face to industry" in March 1997 when they commenced electronic commerce alternatives that they supposed would be "more practical and cost-effective." The principal electronic commerce alternative was use of the World Wide Web, of which Defendants made use "because the Internet reaches millions of users, is inexpensive to use, and allows for the transmission of large amounts of data." On March 13th, 1997 Defendants scheduled replacement of Contract Number DCA200-94-H-0015 by the final quarter of Fiscal Year 1997. Defense Information Systems Agency exercised its unilateral right to terminate Plaintiff's License Agreement, Contract Number DCA200-94-H-0015 on September 17th, 1997.

26. Defendants did not establish electronic procurement capabilities at 208 sites by April 4th, 1996 as set out in the PAT Report. By July 11th, 1996 only one of five Defense Logistics Agency sites had been deployed. Overall, there was a shortage of at least twenty-one electronic procurement sites after April 4th, 1996. And Defendants did not,

as promised, conduct electronic business solely through the sites that were to be established in accordance with the PAT Report.

27. Defendants did not meet the Implementation Plan established in the PAT Report which required that testing and certification of VANs would be available by April 5th, 1994. Only a connectivity test was available in 1995. There was no ability to test for the relevant enveloping and transaction standards. Connectivity testing for Advanced Logic Resources was not completed until June 6th, 1995. Compliance certification testing and load testing for Advanced Logic Resources was not completed until September 9th, 1997. Advanced Logic Resources nonetheless operated under the License Agreement as a VAN from February 1995 through September 17th, 1997. When these processes finally became available, Advanced Logic Resources was one of the first of the few VANs that successfully completed all compliance certifications and load testing.

Consequences of Defendants' Breaches of the License Agreement.

28. By April 4th, 1996, the end of the two-year period in which, per the PAT Report, Defendants were to deliver 208 sites capable of an integrated system of electronic commerce, the volume of electronic small purchase contract actions was extremely

low. Only 19,819 electronic purchase orders were issued in the three-month period from April through June 1996, or an average of 6,606 electronic purchase orders per month. The expectation was that the Department of Defense would annually process some 9.48 million electronic small purchase contract actions, and this actual average of 6,606 electronic purchase orders is less than one percent of the expected monthly total of 790,000 electronic small purchase contract actions per month. The dollar volume of electronic small purchase contract actions was likewise substantially below expectations. The expected annual dollar volume of electronic small purchase contract actions was $11.84 billion. In the first three months of 1996, the dollar volume of electronic small purchase contract awards processed through the Department of Defense hubs was only $56.3 million, or about two percent of the expected dollar volume.

29. The United States Government Accountability Office verified that only a small fraction of the anticipated electronic procurement actions actually occurred in 1995—less than two percent of about 2 million Federal procurement actions valued between $2501 to $100,000 were accomplished electronically. During the period January through March 1996, the Department of Defense accomplished only 17,069 electronic small purchase contract actions, these being only purchase orders. No electronic deliv-

ery orders or electronic modifications were accomplished. These 17,069 electronic purchase orders accomplished in the first three months of 1996 also represent less than one percent of the expected volume of electronic small purchase contract actions.

Plaintiff's Actual and Accrued Income and Expenses.

30. Plaintiff realized a gross income of only $51,155, and a net income of only $1,089 during the period February 3rd, 1995 through December 31st, 1995; and a gross income of only $88,206 and a net income of only $4,337 in calendar year 1996. Plaintiff incurred actual damages during the period January 1st, 1997 through September 17th, 1997—Plaintiff incurred a net loss of $6,789 on a gross income of only $82,557.

31. Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $52,621,151 during the period February 3rd, 1995 through December 31st, 1995, and an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $46,277,505 in calendar year 1996. Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $29,049,246 during the period January 1st, 1997 through September 17th, 1997.

Plaintiff's Claims for Expectancy Damages.

32. Plaintiff Claims expectancy damages of $138,000,000 for the period February 3rd, 1995 through September 17th, 1997. These lost profits are based on an expectancy of an estimated 300,000 vendors interested in conducting electronic business with the Department of Defense.

33. As a VAN, Advanced Logic Resources offered an advantageous infrastructure: Advanced Logic Resources used the World Wide Web as the transport mechanism; Advanced Logic Resource used expendable commercial-off-the-shelf PC servers (much like Google™) instead of heavy-duty, expensive mainframes or minicomputers to host its electronic services; and Advanced Logic Resources immediately deployed table-driven validation routines against all incoming and outgoing electronic data interchange transactions, and these table-driven validation routines went down to the lowest Department of Defense implementation conventions for Accredited Standards Committee (ASC) X12 electronic data interchange transaction sets.

34. Advanced Logic Resources offered bundled annual pricing of $3,600, including unlimited access and support; user-friendly, automatically-updated client application software; automatic and user-configurable and extendable bid search routines; and

specific electronic contracting intelligence, with detailed context-sensitive Help built into *xpEDIter*, Advanced Logic Resources' client application software.

35. Advanced Logic Resources' Claim for expectancy damages is based on obtaining twelve percent of the estimated 300,000 vendors interested in conducting electronic business with the Department of Defense, and this at an annual vendor contract rate of $3,600 per account (an average of $3,200 after discounts). Advanced Logic Resources' Claim for expectancy damages supposes that there would have been a rapid ramp-up of customers absent Defendants' material breaches. Advanced Logic Resources thus has estimated that it would have obtained 14,616 new trading partner accounts (vendors) in the first year of Contract Number DCA200-94-H-0015, 21,136 new trading partner accounts (vendors) in the second year of Contract Number DCA-200-94-H-0015, and 1,129 new trading partner accounts (vendors) in the last nine months of Contract Number DCA200-94-H-0015, this the period before Defense Information Systems Agency unilaterally exercised its right to terminate Contract Number DCA200-94-H-0015. Advanced Logic Resources likewise assumes that the new trading partner accounts (vendors) Advanced Logic Resources had obtained would have been renewed at the end of each year. The result is $138,420,000. Advanced Log-

ic Resources has dropped $420,000 from its Claimed expectancy damages to account for Advanced Logic Resources' actual receipts ($222,018) from Contract Number DCA200-94-H-0015, and, as well, for any unrecognized costs of the projected equipment, personnel, and other expenses that might be associated with acquiring, operating, and supporting these trading partner accounts.

36. In addition to Advanced Logic Resources' Claim for expectancy damages based on obtaining twelve percent of the estimated 300,000 vendors interested in conducting electronic business with the Department of Defense, Advanced Logic Resources Claims expectancy damages based on its share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to the Bulletin Boards. *Rumsfeld v. Applied Companies*, 325 F.3d 1328, 1338-39 (Fed. Cir. 2003). Advanced Logic Resources computes this Claim to diverted business at the same twelve percent share that Advanced Logic Resources claims for its share of the 300,000 estimated vendors interested in conducting electronic business with the Department of Defense. Thus Advanced Logic Resources Claims that its share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to the Bulletin Boards is 14,912 actual vendors. Advanced Logic Resources' Claim for expectancy damages based on a

twelve percent share of the 300,000 estimated vendors is $3,833 for each vendor over the period February 3rd, 1995 through September 17th, 1997. This is a reasonable estimate both for expectancy damages based on a twelve percent share of the 300,000 estimated vendors, and for expectancy damages based on the number of 124,265 actual vendors whose electronic business with the Defendants was diverted to the Bulletin Boards. Advanced Logic Resources' Claim to expectancy damages based on Advanced Logic Resources' share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to the Bulletin Boards is thus $57,157,696.

COUNT I
DEFENDANTS BREACHED THE LICENSE AGREEMENT
WHEN THEY ALLOWED ELECTRONIC COMMERCE
OTHER THAN THROUGH ONE OF THE VANS,
AND THIS BREACH WAS MATERIAL.

37. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 36. hereinabove as if fully set forth herein.

38. Contract Number DCA200-94-H-0015 was breached when Defendants allowed Department of Defense contractors to conduct electronic business other than through one of the thirty-one signatories (the VANs) to Contract Number DCA200-94-H-0015, and this breach was material.

## COUNT II
## DEFENDANTS BREACHED THE LICENSE AGREEMENT WHEN THEY ALLOWED DEPARTMENT OF DEFENSE CONTRACTORS TO REGISTER OTHER THAN THROUGH ONE OF THE THIRTY-ONE SIGNATORIES TO THE LICENSE AGREEMENT.

39. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 36. herein-above as if fully set forth herein.

40. Contract Number DCA200-94-H-0015 was breached when Defendants allowed Department of Defense contractors registering to conduct electronic business with the Department of Defense to do so other than through one of the thirty-one signatories to Contract Number DCA200-94-H-0015, and this breach was material.

## COUNT III
## DEFENDANTS BREACHED THE LICENSE AGREEMENT WHEN THEY ALLOWED DEPARTMENT OF DEFENSE CONTRACTORS TO CONDUCT ELECTRONIC BUSINESS WITHOUT FIRST REGISTERING TO DO SO.

41. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 36. herein-above as if fully set forth herein.

42. Contract Number DCA200-94-H-0015 was breached when Defendants allowed Department of Defense contractors to conduct electronic business with the Department of Defense without first registering to do so, and this breach was material.

### COUNT IV
### DEFENDANTS BREACHED THE LICENSE AGREEMENT WHEN THEY TEMPORARILY SUSPENDED THE MEANS TO REGISTER DEPARTMENT OF DEFENSE CONTRACTORS DESIRING TO CONDUCT ELECTRONIC BUSINESS.

43. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 36. herein-above as if fully set forth herein.

44. Contract Number DCA200-94-H-0015 was breached when Defendants temporarily suspended the means to register Department of Defense contractors desiring to conduct electronic business with the Department of Defense, and this breach was material.

### COUNT V
### DEFENDANTS BREACHED THE LICENSE AGREEMENT WHEN DEFENDANTS ABANDONED THE CONTRACT AND COMMENCED IMPLEMENTATION OF AN ALTERNATIVE TO THE SYSTEM OF ELECTRONIC COMMERCE ESTABLISHED BY THE LICENSE AGREEMENT.

45. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 36. herein-above as if fully set forth herein.

46. Contract Number DCA200-94-H-0015 was breached when Defendants abandoned Contract Number DCA200-94-H-0015 in March 1997 and commenced imple-

mentation of an alternative to the system of electronic commerce established by Contract Number DCA200-94-H-0015, and this breach was material.

COUNT VI
DEFENDANTS BREACHED THE LICENSE AGREEMENT WHEN
DEFENDANTS FAILED TO MEET THE IMPLEMENTATION PLAN
ESTABLISHED FOR THE CONTRACT.

47. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 36. hereinabove as if fully set forth herein.

48. Contract Number DCA200-94-H-0015 was breached when Defendants failed to meet the twenty-four month Implementation Plan established for Contract Number DCA200-94-H-0015, and this breach was material.

COUNT VII
DEFENDANTS BREACHED THE LICENSE AGREEMENT WHEN
DEFENDANTS FAILED TO MEET THE IMPLEMENTATION PLAN
REQUIRING THAT TESTING AND CERTIFICATION OF VANS
WOULD BE AVAILABLE BY APRIL 5TH, 1994.

49. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 36. hereinabove as if fully set forth herein.

50. Contract Number DCA200-94-H-0015 was breached when Defendants failed to meet the Implementation Plan established for Contract Number DCA200-94-H-

0015 requiring that testing and certification of VANs would be available by April 4th, 1994, and this breach was material.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests: (a) that the Court declare that Defendants are in material breach of their obligations under the License Agreement, Contract Number DCA200-94-H-0015; (b) that this Court award Plaintiff a money judgment of $138,000,000, this based on lost profits on an expectancy of an estimated 300,000 vendors interested in conducting electronic business with the Department of Defense; (c) or that this Court award Plaintiff a money judgment of $57,157,696, this based on lost profits on Plaintiff's share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to the Bulletin Boards; (d) alternatively, that this Court determine a fair and reasonable approximation of money damages under the jury verdict method and award this sum to Plaintiff as money damages; and (e) that this Court grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

District of Columbia Bar Number 456500
August 3rd, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: *lawyer@procurement-lawyer.com*

Attorney of record for Plaintiff,
Advanced Logic Resources, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Thursday, August 3rd, 2006 a true and complete copy of this Amended Complaint was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Domenique Kirchner, Esq.

Electronic Mail: Domenique.Kirchne@usdoj.gov

Attorney of record for Defendants,
United States Department of Defense.