# In the United States Court of Federal Claims

| | | |
|---|---|---|
| **ADVANCED LOGIC RESOURCES, INCORPORATED,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-531C** |
| | ) | **Judge Robert H. Hodges, Jr.** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

SECOND AMENDED COMPLAINT
ON AN EXPRESS CONTRACT CLAIM

NATURE OF THE ACTION

1. Plaintiff Advanced Logic Resources, Incorporated, 244 Mill Road, Yaphank, New York 11980-9783 (Advanced Logic Resources) files this Second Amended Complaint in accordance with RCFC 15(a). Advanced Logic Resources seeks declaratory relief and a money judgment under the Contract Disputes Act, 41 U.S.C. § 609(a)(1), and under the Federal Courts Administration Act of 1992, 28 U.S.C. §§ 1491(a)(1), 1491(a)(2). Plaintiff challenges a final decision of a Defense Information Technology Contracting Organization (DITCO) Contracting Officer on May 22nd, 2006, 41 U.S.C.

§ 605(a), a final decision denying a properly-certified Quantum Claim by Advanced Logic Resources for $138,000,000 in money damages arising by reason of material breaches by the Defense Information Systems Agency (DISA) and other Department of Defense (DoD) Agencies under Value-Added Network License Agreement Number DCA200-94-H-0015 (the VLA). The DITCO Contracting Officer acknowledges receipt of Advanced Logic Resources' properly-certified Quantum Claim on February 24th, 2006. The DITCO Contracting Officer denies that Defendants are in material breach: "the Government has complied with the terms of the License Agreement, and ALR is not entitled to compensation." Plaintiff asserts: (1) that the VLA was breached when Defendants allowed DoD contractors to conduct with DoD electronic business for small and simplified purchases other than through one of the thirty-one signatories (the Value-Added Network (VAN) Providers) to the VLA; (2) that the VLA was breached when Defendants allowed DoD contractors registering to conduct electronic business for small and simplified purchases with DoD to do so other than through one of the thirty-one signatories to the VLA; (3) that the VLA was breached when Defendants allowed DoD contractors to conduct electronic business for small and simplified purchases with DoD without first registering to do so; (4) that the VLA was

breached when Defendants temporarily suspended the means to register DoD contractors desiring to conduct electronic business for small and simplified purchases; (5) that the VLA was breached when Defendants abandoned the VLA in March 1997 and commenced implementation of an alternative to the single, unified DoD-wide system of electronic commerce for small and simplified purchases established by the VLA; (6) that the VLA was breached when Defendants failed to meet the twenty-four month Implementation Plan established for the VLA; and (7) that the VLA was breached when Defendants failed to meet the Implementation Plan requiring that testing and certification of VANs would be available by April 5th, 1994. By reason of these material breaches of the VLA, Plaintiff asserts: (1) that Plaintiff realized a gross income of only $51,255 during the period February 3rd, 1995 through December 31st, 1995; a gross income of only $88,206 in calendar year 1996; and a gross income of only $82,557 during the period January 1st, 1997 through September 17th, 1997; (2) that Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $52,621,151 during the period February 3rd, 1995 through December 31st, 1995, and an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $46,277,505 in calendar year 1996; and

(4) that Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $29,049,246 during the period January 1st, 1997 through September 17th, 1997. Plaintiff Claims an award of money damages, these based on lost profits on an expectancy of 300,000 vendors interested in conducting electronic business for small and simplified purchases with DoD, of $132,543,000 for the period April 5th, 1996 through September 17th, 1997. Alternatively, Plaintiff Claims an award of money damages, these based on lost profits on Plaintiff's share of the 124,265 actual vendors whose electronic business for small and simplified purchases with Defendants was diverted to separate Activity-specific electronic commerce systems for small and simplified purchases, of $50,479,000 for the same period, April 5th, 1996 through September 17th, 1997. Alternatively, Plaintiff Claims a fair and reasonable approximation of money damages as determined under the jury verdict method, this also to be awarded as a money judgment.

## PARTIES

2. Advanced Logic Resources is a for-profit New York corporation. Advanced Logic Resources is an awardee of the VLA, and thus a proper "Contractor" under the Contract Disputes Act, 41 U.S.C. § 601(4). Advanced Logic Resources was one of

thirty-one VAN Providers. The VLA became effective for Advanced Logic Resources on February 3rd, 1995 when it was counter-signed by a Contracting Officer at DITCO, a field activity of DISA. Advanced Logic Resources is a proper party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(B)(ii), i.e., Advanced Logic Resources is a private party and a corporation which at the time this Civil Action is filed has not more than 500 employees and whose net worth does not exceed $7,000,000. DISA is a United States Department of Defense agency. Defendants DITCO, DISA, and the United States Department of Defense are agencies and entities of the United States, and the United States Department of Defense is a proper "Executive Agency" under the Contract Disputes Act, 41 U.S.C. § 601(2). The VLA is an express License Agreement giving Advanced Logic Resources and some few others the exclusive right to transmit DoD electronic business transactions for small and simplified purchases, an express License Agreement entered into by an Executive Agency for the procurement of services, and thus an Executive Agency Contract to which the Contract Disputes Act applies, 41 U.S.C. § 602(a)(1). Defendants DITCO, DISA, and the United States Department of Defense are hereinafter referred to, collectively, as "the Defendants."

## JURISDICTION

3. This Court has jurisdiction under 28 U.S.C. § 1491(a)(1), 28 U.S.C. § 1491(a)-(2), and 41 U.S.C. § 609(a)(1). The decision by the DITCO Contracting Officer on May 22nd, 2006 denying a properly-certified Quantum Claim by Advanced Logic Resources is sufficiently final for the purposes of the Contract Disputes Act, 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."), is sufficiently final under 28 U.S.C. § 1491(a)(1) for this Civil Action seeking a money judgment (It is a "claim against the United States founded . . . upon any express . . . contract with the United States."), and is sufficiently final under 28 U.S.C. § 1491(a)(2) for this Civil Action seeking declaratory relief because this Civil Action arises, literally, from "a nonmonetary [dispute] on which a decision of the contracting officer has been issued . . . ." *Record Steel and Construction, Inc. v. United States*, 62 Fed. Cl. 508, 520 (2004).

4. This Civil Action is timely filed. Advanced Logic Resources received the final decision of the DITCO Contracting Officer denying Advanced Logic Resource's prop-

erly-certified Quantum Claim on the day after it was issued, May 23rd, 2006, and this Civil Action is filed within one year from that date, 41 U.S.C. § 609(a)(3).

5. Advanced Logic Resources submitted a timely Entitlement Claim under the VLA to a DITCO Contracting Officer on July 21st, 1999, and the DITCO Contracting Officer denied this Entitlement Claim on October 25th, 1999. Advanced Logic Resources timely appealed to the Armed Services Board of Contract Appeals (ASBCA) on December 13th, 1999; this Appeal was docketed before the ASBCA as ASBCA No. 52-467. The parties agreed to bifurcate Entitlement and Quantum and to suspend proceedings under this Appeal pending resolution of Entitlement in another case, *GAP Instrument Corp*., ASBCA No. 51658, *2001 ASBCA LEXIS 47*, an Appeal likewise arising under the VLA, and an Appeal where Entitlement and Quantum were likewise bifurcated.

6. In its Decision of March 22nd, 2001 on GAP Instrument's Entitlement Claim, the ASBCA found that Defendants had violated the Exclusivity provisions of the VLA; that these violations were material breaches, *GAP Instrument*, *2001 ASBCA LEXIS 47 *30-*31*; and that these Exclusivity provisions "had business value, because appellant could charge fees to contractors which, had the Government kept

its promise, would have had no choice but to use the services of the little coterie of VAN providers of which appellant was a member," *GAP Instrument*, *2001 ASBCA LEXIS 47 *32-*33*.

7. The DITCO Contracting Officer contends, in her final decision of May 22nd, 2006 denying a properly-certified Quantum Claim by Advanced Logic Resources that this Quantum Claim has replaced and superseded Advanced Logic Resources' Entitlement Claim of 1999.

8. Assuming, but only for the purposes of argument, that the Advanced Logic Resources Quantum Claim has replaced and superseded Advanced Logic Resources' Entitlement Claim of 1999, then the Advanced Logic Resources Quantum Claim is properly now before the Court. Advanced Logic Resources' Quantum Claim could have arisen no earlier than March 22nd, 2001, the date the ASBCA issued its Decision in *GAP Instrument*, *2001 ASBCA LEXIS 47 *33*. Federal Acquisition Regulation 33.201 defines "Accrual of a claim" as follows:

> "Accrual of a claim" means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

Federal Acquisition Regulation 33.201. The ASBCA's Decision of March 22nd, 2001 in *GAP Instrument*, *2001 ASBCA LEXIS 47 *33* was the first date on which Defendants: (1) were found to have violated the Exclusivity provisions of the VLA; (2) that these violations were material breaches, *GAP Instrument*, *2001 ASBCA LEXIS 47 *30-*31*; (3) that these Exclusivity provisions "had business value, because appellant could charge fees to contractors which, had the Government kept its promise, would have had no choice but to use the services of the little coterie of VAN providers of which appellant was a member," *GAP Instrument*, *2001 ASBCA LEXIS 47 *32-*33*; and (4) that GAP Instrument (and the other thirty signatories of the VLA) had incurred some injury (damage), *GAP Instrument*, *2001 ASBCA LEXIS 47 *33.*

9. The United States did not Appeal to the United States Court of Appeals for the Federal Circuit, as it could have, 41 U.S.C. § 607(g)(1)(B), from these holdings in *GAP Instrument*, *2001 ASBCA LEXIS 47.* In *CACI International, Inc.*, ASBCA Nos. 53058, 54110, *2005 ASBCA LEXIS 36*, *aff'd per curiam*, *2006 U.S. App. LEXIS 9710* the ASBCA again held that DoD had breached its obligation under the VLA to implement by April 5th, 1996 a single unified DoD-wide system to electronically conduct business (small and simplified purchase transactions), and that DoD had breached its obliga-

tion under the VLA by continuing to electronically conduct business (small and simplified purchase transactions) other than through VAN Providers that had signed the VLA. *CACI International, 2005 ASBCA LEXIS 36, *51-*55.* But the ASBCA awarded that Contractor no damages and that Contractor appealed to the United States Court of Appeals for the Federal Circuit; on Appeal, the ASBCA decision was affirmed without opinion. The United States did not cross-appeal to the United States Court of Appeals for the Federal Circuit from the Entitlement holdings of the ASBCA.

10. The Contract Disputes Act, 41 U.S.C. § 605(a), requires that "claim[s] by a contractor against the government relating to a contract . . . shall be submitted within 6 years after accrual of the claim." Here, the DITCO Contracting Officer has acknowledged receipt of the Advanced Logic Resources Quantum Claim as of February 24th, 2006, well within six years after the ASBCA's Decision of March 22nd, 2001, the earliest date on which the Advanced Logic Resources Quantum Claim can be found to have accrued in favor of Advanced Logic Resources. And because Advanced Logic Resources received the final decision of the DITCO Contracting Officer denying Advanced Logic Resource's properly-certified Quantum Claim on the day after it was

issued, May 23rd, 2006, this Civil Action is timely filed within one year from that date, 41 U.S.C. § 609(a)(3).

## AVERMENTS

The Process Access Team Report.

11. On December 20th, 1993 the DoD Electronic Commerce in Contracting Process Access Team (PAT) issued its comprehensive plan for implementing throughout DoD electronic commerce (EC) through electronic data interchange (EDI) for small and simplified purchases. This plan was for the migration of the various electronic procurement systems in use at DoD Activities and for the deployment of electronic procurement capabilities at new sites, all gathered together into a single, unified DoD-wide electronic commerce system. The PAT Report provided for just two DoD "hubs" (computer-based facilities that would present a centralized interface to the single unified DoD-wide system). The PAT Report was approved on January 5th, 1994.

12. The PAT Report expected that over 300,000 vendors were interested in conducting electronic business for small and simplified purchases with DoD. Likewise, the PAT Report explained that an actual 124,265 DoD vendors were already being served by separate DoD electronic procurement systems, including "Direct Connects"

where DoD computers exchanged electronic procurement data with directly-connected vendor computers, "Network Solutions" where DoD computers exchanged electronic procurement data with a network of remote vendor computers, and "Bulletin Boards" where DoD computers were made available for vendors "to log in for download or upload of information." The comprehensive plan announced in the PAT Report encompassed small and simplified purchase contract actions, i.e., purchase orders, delivery orders, and modifications valued at $25,000 or less. The PAT Report observed that the annual service fees charged vendors for access to just one of the existing separate DoD electronic procurement systems were $720. With an anticipated market of an expected 300,000 vendors, this amounts to potential income of $216 million per year to be shared by the thirty-one VAN Providers to be given exclusive access to DoD electronic commerce for small and simplified purchase contract actions. For the existing market of 124,265 actual vendors, this amounts to potential income of $89,470,800 per year, this likewise to be shared by the thirty-one VAN Providers to be given exclusive access to DoD electronic commerce for small and simplified purchase contract actions.

13. During its Fiscal Year ended September 30th, 1992, approximately ninety-eight percent of DoD contract actions, or 11.851 million contract actions, were for $25,000 or less. These small and simplified purchase contract actions consisted of three types: purchase orders, delivery orders, and modifications. In Fiscal Year 1992, six million small purchase contract actions were purchase orders, and the rest were delivery orders or modifications. The PAT Report estimated that eighty percent of these small and simplified purchase contract actions ($25,000 or less) "could be accomplished through current EDI technologies and methods . . . ." The DoD sites where electronic commerce would be consolidated into a single unified DoD-wide system of electronic commerce had a volume of more than 10,000 small and simplified purchase contract actions per year, and these DoD sites processed more than eighty percent of all small and simplified purchase contract actions. Thus DoD supposed that these DoD sites would annually process 9.48 million electronic small and simplified purchase contract actions. In Fiscal Year 1992, DoD spent $14.8 billion on those 11.851 million small and simplified purchase contract actions. Thus the expected annual dollar volume of electronic small and simplified purchase contract actions was eighty percent of $14.8 billion, or $11.84 billion. The small purchase ceiling was then $25,000, and this ceiling

was increased to $100,000 on October 13th, 1994 with enactment of the Federal Acquisition Streamlining Act of 1994, 10 U.S.C. § 2302a, 41 U.S.C. § 403(11). The Federal Acquisition Streamlining Act mandated the creation of the Federal Acquisition Network (FACNET), and FACNET was to provide the infrastructure to support Government-wide implementation of electronic commerce/electronic data interchange. Defendants were made responsible for the implementation of this infrastructure.

14. The PAT Report provided up to a ninety-day lead time to begin the consolidation of existing DoD electronic procurement systems and the expansion of these existing systems into a final DoD-wide system of 208 DoD sites. Given the date of approval of the PAT Report (January 4th, 1994), the two-year Implementation Plan set out in the PAT Report was to begin on April 5th, 1994 and was to be completed on April 4th, 1996. The Implementation Plan in the PAT Report proposed to deliver consolidated electronic commerce at 113 sites in six months after April 5th, 1994, and to have a total of 208 sites operating in an integrated DoD-wide system of electronic commerce by April 4th, 1996. The Implementation Plan in the PAT Report likewise promised that testing and certification for VANs would become available within no more than ninety days after approval of the PAT Report, or likewise on or before April 5th, 1994.

15. The PAT Report announced the implementation of a "single face to industry":

> A "single face to industry" is defined as performance of EC [electronic commerce] by the Government using EDI [electronic data interchange] in accordance with federal information processing standards and a common set of business practices and operational principles. It must be a solution which allows the vendor to be able to process the transaction to and/or from any DoD activity, minimally subscribe to one VAN to do business with all DoD, and register only once to become a DoD supplier (rather than with each DoD component/activity).

16. One feature of the planned single unified DoD-wide system for implementing electronic commerce was establishment of a centralized database, the Central Contractor Registration (CCR) database, so that a DoD vendor need only register once, and having done so, this DoD vendor could access and respond to small and simplified purchase electronic contract opportunities from any DoD Activity. The CCR database was, per a memorandum signed by President William Jefferson Clinton on October 26th, 1993 to be fully operational by July 1995. Presidential Memorandum re "Streamlining Procurement Through Electronic Commerce," October 26th, 1993, ¶ 2.(c), 58 Fed. Reg. 58095, 58096 (1993).

17. Noting that development of DoD-wide electronic commerce had previously been the responsibility of the Defense Logistics Agency (DLA), the PAT Report an-

nounced that this mission had been transferred to DISA, and that DISA would be responsible for the creation of an EC/EDI infrastructure under the operation and control of DISA, this including the creation and operation of the DoD hubs and DISA execution and administration of the VLA.

The VAN License Agreement.

18. Plaintiff signed its copy of the VLA on December 9th, 1994. Plaintiff's Value-Added Network License Agreement Number DCA200-94-H-0015 became effective on February 3rd, 1995 when it was counter-signed by a DITCO Contracting Officer.

19. The VLA provided, *inter alia*:

> The EDI VAN Provider hereby provides the Government with the right to have access to the use of its EDI and Value-Added Network Services at no-cost to the Government for the purpose of exchanging business documents and information with individuals and organizations conducting business with the Government throughout the DOD Hub Gateway Computers. The network charges that would otherwise be applicable to the Government, for transmission of documents in an electronic format will be waived for the duration of the license agreement. In consideration for the EDI VAN Provider granting the Government this right, the Government agrees that it will not use, resell, or otherwise make available Contractor's services outside the scope of this agreement without the prior written permission of the EDI VAN Provider.

Article 1. License Grant.

> The license hereby granted may terminate in whole or in part, by giving the EDI VAN provider or Contracting Officer not less than thirty (30) calendar days notice in writing of the date such termination is to be effective.
>
> The term of this agreement shall be for one year. The agreement may be extended for four one-year periods after the Government conducts an annual review of the agreement. . . .
>
> Revisions to the License Agreement shall be made unilaterally by the Government. Any changes made to the Agreement, its Technical Scope of Work or Addendum A will apply to all signers of the Agreement, i.e., all participating EDI VAN Providers.

Article 2. License Term.

> In consideration for the Electronic Data Interchange (EDI) Value Added Network (VAN) provided by the EDI VAN provider and the access to the DOD Hubs located at up to two locations for operations and disaster recovery purposes, provided by the Government, as described in the Technical Scope of Work, there will be no monetary charge to either party. *Sole consideration shall be the EDI VAN services provided by the EDI VAN provider and access to the DOD data provided by the DOD Hubs.*

Article 3. Payment. (Emphasis added.)

. . . .

> This license agreement provides for EDI VAN Provider access to the EC data provided as described in the Technical Scope of Work. *The DOD Hubs will provide DOD transactions offered under this agreement only to VANs signing this agreement. DOD will not provide these transactions to VANs under other agreements. This license agreement shall be used exclusively for ob-*

> *taining access to the EC Data provided by the DOD Hubs computer during the term of this agreement.*

Article 7. Exclusivity. (Emphasis added.)

> This agreement shall be effective the date Government signs the agreement and shall continue unless sooner terminated in accordance with the provisions of this agreement. The total duration of this License Agreement shall not exceed 60 months (one basic year with four one-year periods).

Article 8. Extend Term of Agreement.

> The magnitude of DOD transactions depends on Congressional appropriations. Therefore, DOD cannot guarantee any minimal level transactions activity at any of its facilities.

Article 9. Minimum Guarantee.

. . . .

> The License Agreement is for use by both DOD and non-DOD Agencies.

Article 11. Use of License Agreement.

20. The VLA incorporated by reference, at Article 12. Clauses Incorporated by Reference, the Disputes clause of December 1991. Subparagraph (a) of this Disputes clause provides: "This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613)."

21. The VLA included a Technical Scope of Work, and this Technical Scope of Work provided, *inter alia*:

> Services as specified in the addendum(s) may begin after successful testing of the following: (1) connectivity between the EDI VAN Provider and the Hubs' Computers; (2) compliance with the relevant enveloping and transaction standards; and (3) other requirements in this agreement. Testing will commence after the DoD Technical Representative has informed the EDI VAN Provider that DoD is ready and the EDI VAN Provider responds that is [sic] ready. . . .

K. Testing and Initiation of Services.

. . . .

> All DoD-to-contractor transactions electronically exchanged as part of this EC program must be exchanged via a participating EDI VAN Provider. EDI VAN Providers participating in this agreement will be notified of the schedule of implementation of DoD activities in this EC program. *DoD activities will be phased into this program in accordance with a DoD-wide plan.* Electronic exchanges between DoD activities will not be conducted under this Agreement.

N. Other Considerations. (Emphasis added.)

22. The VLA included an Addendum A, and this Addendum A provided, *inter alia*:

> *EDI-capable DoD activities will be phased into using this approach based on a DoD-wide implementation plan.*

Requests for quotations (RFQs) will be issued by DoD activities, quotes will be sent by interested contractors to these activities, and the activities will make awards. All electronic transactions will be exchanged via the multi-VAN DoD Hubs. All contractors will send and receive transactions via one of the participating EDI VAN Providers.

*Before conducting electronic commerce with DoD, all contractors must register using a simple electronic registration transaction sent to DoD via a participating EDI VAN Provider.*

1. Overview. (Emphasis added.)

*DoD will require all contractors desiring to electronically conduct business to only do so with a participating, fully tested EDI VAN Provider.* Any contractor may also exchange transactions by other means (i.e., not electronic) in accordance with the FAR and other applicable regulations. *DoD will require registered vendors to exchange all electronic transactions via a participating EDI VAN Provider. DoD activities participating in this approach will be phased into it in accordance with a DoD-wide implementation plan.*

2.1. Contractor Use of VAN Services. (Emphasis added.)

*All contractors must register with DoD to conduct business with DoD activities using the DoD-wide approach to electronic commerce* described in this Addendum.

4. Vendor Registration Information and Capabilities. (Emphasis added.)

The EDI VAN Provider must directly or indirectly provide any interested subscriber the capability to complete the registration transaction set. The transaction set will be the ASC X12 838 transaction set following the DoD implementation conventions. The DoD expects the EDI VAN Provider to

enable subscribers to conduct these four steps easily, preferably using electronic mail or similar electronic means.

4.4 Registration Transaction.

Defendants' Breaches of the VLA.

23. One DoD component, DLA, had about fifty percent of all available DoD small and simplified purchase contract actions. DLA operated its own Activity-specific electronic commerce systems for small and simplified purchases in violation of the exclusivity promised by the VLA, and these Activity-specific electronic commerce systems offered free access to electronic transactions for small and simplified purchase contract actions, transactions that were otherwise available only through one of the VAN Providers. Likewise, the three Military Departments and other DoD components operated Activity-specific electronic commerce systems for small and simplified purchases in violation of the exclusivity promised by the VLA.

24. These Activity-specific electronic commerce systems were a diversion of the electronic business of 124,265 actual vendors that otherwise would have been conducted through the thirty-one VANs. On information and belief, Defendants allowed this diversion of the electronic business of 124,265 actual vendors that otherwise

would have been conducted through the thirty-one VANs because full implementation of the VLA and FACNET (of which the VLA was a part after enactment of the Federal Acquisition Streamlining Act) was perceived as a threat to the continued employment of many of Defendants' acquisition personnel.

25. On May 24th, 1996 DoD's Inspector General issued an Audit Report on the process of implementation of the single unified DoD-wide electronic commerce system. The Inspector General reported that vendors were not using the system because of: (a) lack of a single face to industry, i.e., multiple systems and standards were being used; (b) DoD/DISA problems in transmitting data; (c) lack of DoD management controls; and (d) vendor disinterest due to (1) the low number of the transactions passing through the single unified DoD-wide electronic commerce system, and (2) the costs for vendors to invest in the necessary hardware and software and to pay for VAN services to access these transactions through the single unified DoD-wide electronic commerce system. In fact, electronic transactions for small and simplified purchase contract actions were being made freely available on DoD Activity-specific electronic commerce systems.

26. By June 1996 implementation of the CCR database was one year behind schedule. Among other things, this delay in implementation of the CCR database resulted from Defendants' redesign of the CCR database to accommodate FACNET. Through October 1996 only about 4,000 of the expected 300,000 vendors interested in conducting electronic business with DoD had registered in the CCR database. This resulted in Defendants establishing a World Wide Web site and dial-up modem capability which allowed vendors to directly register in the CCR database without going through one of the thirty-one VANs. Defendants thus were in breach of their obligation under the VLA, which allowed vendor registration in the CCR database *only* through a VAN Provider. Another consequence of this dearth of registrations was that DoD components were compelled to electronically award small and simplified purchase contracts to unregistered vendors.

27. During the period beginning in 1995 through October 1996, Defendants closed access to the CCR database while the CCR database was redesigned to accommodate FACNET.

28. By June 1997 there were still less than 9,000 vendors registered in the CCR database. Defendants then proposed that vendors must register in the CCR database

as a condition of receiving electronic small and simplified purchase contract actions after March 31st, 1998. Finally, Defendants ordered in mid-1998 that vendors must register in the CCR database as a precondition to payment under any DoD small and simplified purchase contract. This order resulted in some 150,000 CCR database registrations.

29. Defendants effectively abandoned the VLA and the promised "single face to industry" in March 1997 when they commenced electronic commerce alternatives which they supposed would be "more practical and cost-effective." The principal electronic commerce alternative was use of the World Wide Web, of which Defendants made use "because the Internet reaches millions of users, is inexpensive to use, and allows for the transmission of large amounts of data." On March 13th, 1997 Defendants scheduled replacement of the VLA by the final quarter of Fiscal Year 1997. DISA exercised its unilateral right to terminate Plaintiff's VLA on September 17th, 1997.

30. Defendants did not establish electronic procurement capabilities at 208 sites by April 4th, 1996 as set out in the PAT Report. By July 11th, 1996 only one of 5 DLA procurement sites had been deployed. Overall, there was a shortage of at least 21 electronic procurement sites after April 4th, 1996. And Defendants did not, as promised in the

VLA, conduct electronic business for small and simplified purchase contract actions solely through the single unified DoD-wide electronic commerce system that was to be established in accordance with the PAT Report.

31. Defendants did not meet the Implementation Plan established in the PAT Report which required that testing and certification of VANs would be available by April 5th, 1994. Only a connectivity test was available in 1995. There was no ability to test for the relevant enveloping and transaction standards. Connectivity testing for Advanced Logic Resources was not completed until June 6th, 1995. Compliance certification testing and load testing for Advanced Logic Resources was not completed until September 9th, 1997. Advanced Logic Resources nonetheless operated under the VLA as a VAN from February 1995 through September 17th, 1997. When these processes finally became available, Advanced Logic Resources was one of the first of the few VANs that successfully completed all compliance certifications and load testing.

32. One of DLA's procurement sites, Defense Industrial Supply Center, on August 14th, 1997 issued a public notice that explained the operation of its Electronic Bulletin Board. Defense Industrial Supply Center said that vendors needed to complete a Simplified Purchase Agreement before vendors could be authorized to sub-

mit electronic quotations for small and simplified purchase contract actions up to the Simplified Acquisition Threshold of $100,000. Defense Industrial Supply Center explained that its Electronic Bulletin Board was operating as an Activity-specific electronic commerce system outside the single unified DoD-wide electronic commerce system:

> **WHAT IS THE DIFFERENCE BETWEEN THE EBB AND "TRUE" EDI?**
>
> The EBB allows direct communication with DISC. You dial up and you are connected to the Bid Board. No special software is required, no third party transmitter need be involved. You can view solicitations and leave quotes on the board. The quotes are sent directly to the buyer's computer. Awards are currently done manually.
>
> With true EDI you are connected to a DoD-certified VAN. You receive and send all electronic data for all DoD agencies through these VANs. **IN ORDER TO DO ELECTRONIC DATA INTERCHANGE (EDI) WITH DISC AND OTHER DOD AGENCIES, YOU MUST BE SUBSCRIBED TO A DOD-CERTIFIED VAN.**
>
> **DISC AND EDI**
>
> Quotes can be sent for "T" solicitations via EDI and the 843 transaction set. *If you are not subscribed to a VAN currently, you can still quote on the DISC Bulletin Board.* Purchase Orders (transaction set 850) will soon be sent to you via EDI as long as you have a VAN and have completed the DISC Simplified Purchase Agreement. Delivery orders placed against Long Term Contracts are being transmitted via EDI.

(Emphasis added). Per this public notice, transactions flowing through the single unified DoD-wide system for electronic commerce established under the VLA, transactions available only to those DoD vendors who were paying fees to one of the VAN Providers, were also being made available, without charge, to any DoD vendor that made the small amount of effort necessary to dial into this Electronic Bulletin Board over the public telephone network.

33. On October 22nd, 1997 DoD's Inspector General issued an Audit Report on the Central Contractor Registration (CCR) Program. The Inspector General reported that:

> Progress in centrally registering contractors who wish to do business with DoD has been disappointingly slow. Only 3.3 percent of about 400,000 potential Government contractors have registered with the CCR Program since the program was initiated in December 1994. As a result, the vision of using a single method of collecting contractor information is not being realized . . . .

The Inspector General concluded that DoD "has not used existing contractor data effectively to populate the CCR database," and the Inspector General explained that he had examined "data available in other commercial and Government-owned databases." Table 1 in this Audit Report presents the number of vendors registered

in "locally developed contractor databases." This Table reports the number of vendors registered in electronic commerce databases maintained locally by the three Military Departments and by Military Traffic Management Command, a DoD component. There were a total of 98,884 vendors registered in these locally-developed DoD databases of electronic commerce vendors.

34. DoD announced in the *DoD Electronic Commerce Newsletter* of December 1997 a new initiative for the CCR Program:

> The DoD is proposing to require that contractors register in the CCR as a condition for receiving DoD contracts resulting from solicitations issued after March 31, 1998. . . . To ease the burden registration imposes on contractors, the DoD created a file from existing databases to "seed" the CCR. Each contractor will be sent a copy of its CCR profile to verify, correct, and add missing data elements. The Defense Logistics Service Center (DLSC) began sending the first of 318,000 seed file letters to contractors on 21 November 1997. . . .

On December 20th, 1993 the PAT Report said over 300,000 vendors were interested in conducting electronic commerce with DoD; now, in December 1997, DoD was reporting that there were 318,000 vendors in existing DoD databases of electronic commerce vendors.

Consequences of Defendants' Breaches of the VLA.

35. By April 4th, 1996, the end of the two-year period in which, per the PAT Report, Defendants were to begin operation at 208 sites in a single, integrated DoD-wide system of electronic commerce, the volume of electronic small purchase contract actions was extremely low. Only 19,819 electronic purchase orders were issued through the single unified DoD-wide system for electronic commerce established under the VLA in the three-month period from April through June 1996, or an average of 6,606 electronic purchase orders per month. The expectation was that DoD would annually process some 9.48 million electronic small purchase contract actions through the single unified DoD-wide system for electronic commerce established under the VLA, and this actual average of 6,606 electronic purchase orders is less than one percent of the expected monthly total of 790,000 electronic small purchase contract actions per month. The dollar volume of electronic small purchase contract actions was likewise substantially below expectations. The expected annual dollar volume of electronic small purchase contract actions through the single unified DoD-wide system for electronic commerce established under the VLA was $11.84 billion. In the first three months of 1996, the dollar volume of electronic small purchase contract awards

processed through the single unified DoD-wide system for electronic commerce established under the VLA was only $56.3 million, or about two percent of the expected dollar volume.

36. The United States Government Accountability Office verified that only a small fraction of the anticipated electronic procurement actions actually occurred in 1995—less than two percent of about 2 million Federal procurement actions valued between $2501 to $100,000 were accomplished electronically. During the period January through March 1996, DoD accomplished only 17,069 electronic small purchase contract actions, these being only purchase orders. No electronic delivery orders or electronic modifications were accomplished. These 17,069 electronic purchase orders accomplished in the first three months of 1996 also represent less than one percent of the expected volume of electronic small and simplified purchase contract actions passing through the single unified DoD-wide system for electronic commerce established under the VLA.

Plaintiff's Actual and Accrued Income and Expenses.

37. Plaintiff realized a gross income of only $51,155, and a net income of only $1,089 during the period February 3rd, 1995 through December 31st, 1995; and a gross

income of only $88,206 and a net income of only $4,337 in calendar year 1996. Plaintiff incurred actual damages during the period January 1st, 1997 through September 17th, 1997—Plaintiff incurred a net loss of $6,789 on a gross income of only $82,557.

38. Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $52,621,151 during the period February 3rd, 1995 through December 31st, 1995, and an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $46,277,505 in calendar year 1996. Plaintiff realized an actual and accrued net loss, including Defense Contract Audit Agency-approved rates for overhead, of $29,049,246 during the period January 1st, 1997 through September 17th, 1997.

Plaintiff's Claims for Expectancy Damages.

39. Plaintiff Claims expectancy damages of $132,543,000 for the period April 5th, 1996 through September 17th, 1997. These lost profits are based on an expectancy of 300,000 vendors interested in conducting electronic business with DoD.

40. As a VAN, Advanced Logic Resources offered an advantageous infrastructure: Advanced Logic Resources used the World Wide Web as the transport mechanism; Advanced Logic Resource used expendable commercial-off-the-shelf PC servers

(much like Google™) instead of heavy-duty, expensive mainframes or minicomputers to host its electronic services; and Advanced Logic Resources immediately deployed table-driven validation routines against all incoming and outgoing electronic data interchange transactions, and these table-driven validation routines went down to the lowest DoD implementation conventions for Accredited Standards Committee (ASC) X12 electronic data interchange transaction sets.

41. Advanced Logic Resources offered bundled annual pricing of $3,600, including unlimited access and support; user-friendly, automatically-updated client application software; automatic and user-configurable and extendable bid search routines; and specific electronic contracting intelligence, with detailed context-sensitive Help built into *xpEDIter*, Advanced Logic Resources' client application software.

42. Advanced Logic Resources' Claim for expectancy damages is based on obtaining twelve percent of the expected 300,000 vendors interested in conducting electronic business with DoD, and this at an annual vendor contract rate of $3,600 per account (an average of $3,200 after discounts). Advanced Logic Resources' Claim for expectancy damages supposes that there would have been a rapid ramp-up of customers absent Defendants' material breaches. Advanced Logic Resources likewise assumes that

the new trading partner accounts (vendors) Advanced Logic Resources had obtained would have been renewed at the end of each year.

43. Alternatively, Advanced Logic Resources Claims expectancy damages based on its share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to Activity-specific electronic commerce systems. *Rumsfeld v. Applied Companies*, 325 F.3d 1328, 1338-39 (Fed. Cir. 2003). Advanced Logic Resources computes this Claim to diverted business at the same twelve percent share that Advanced Logic Resources claims for its share of the 300,000 expected vendors interested in conducting electronic business with DoD. Thus Advanced Logic Resources Claims that its share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to Activity-specific electronic commerce systems is 14,912 actual vendors. Advanced Logic Resources' Claim to expectancy damages based on Advanced Logic Resources' share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to Activity-specific electronic commerce systems is thus $50,479,000.

COUNT I
DEFENDANTS BREACHED THE VLA
WHEN THEY ALLOWED ELECTRONIC COMMERCE
OTHER THAN THROUGH ONE OF THE VANS,
AND THIS BREACH WAS MATERIAL.

44. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 43. herein-above as if fully set forth herein.

45. The VLA was breached when Defendants allowed DoD contractors to conduct electronic business other than through one of the thirty-one VAN Providers, and this breach was material.

COUNT II
DEFENDANTS BREACHED THE VLA
WHEN THEY ALLOWED DOD CONTRACTORS
TO REGISTER OTHER THAN THROUGH ONE
OF THE THIRTY-ONE SIGNATORIES TO THE VLA.

46. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 43. herein-above as if fully set forth herein.

47. The VLA was breached when Defendants allowed DoD contractors registering to conduct electronic business with DoD to do so other than through one of the thirty-one VAN Providers, and this breach was material.

COUNT III
DEFENDANTS BREACHED THE VLA
WHEN THEY ALLOWED DOD CONTRACTORS
TO CONDUCT ELECTRONIC BUSINESS WITHOUT
REGISTERING TO DO SO.

48. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 43. herein-above as if fully set forth herein.

49. The VLA was breached when Defendants allowed DoD contractors to conduct electronic business with DoD without first registering to do so, and this breach was material.

COUNT IV
DEFENDANTS BREACHED THE VLA WHEN
THEY TEMPORARILY SUSPENDED THE MEANS
TO REGISTER DOD CONTRACTORS
DESIRING TO CONDUCT ELECTRONIC BUSINESS.

50. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 43. herein-above as if fully set forth herein.

51. The VLA was breached when Defendants temporarily suspended the means to register DoD contractors desiring to conduct electronic business with DoD, and this breach was material.

### COUNT V
### DEFENDANTS BREACHED THE VLA WHEN DEFENDANTS ABANDONED THE VLA AND COMMENCED IMPLEMENTATION OF AN ALTERNATIVE TO THE SYSTEM OF ELECTRONIC COMMERCE ESTABLISHED BY THE VLA.

52. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 43. herein-above as if fully set forth herein.

53. The VLA was breached when Defendants abandoned the VLA in March 1997 and commenced implementation of an alternative to the system of electronic commerce established by the VLA, and this breach was material.

### COUNT VI
### DEFENDANTS BREACHED THE VLA WHEN DEFENDANTS FAILED TO MEET THE IMPLEMENTATION PLAN ESTABLISHED FOR THE VLA.

54. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 43. herein-above as if fully set forth herein.

55. The VLA was breached when Defendants failed to meet the twenty-four month Implementation Plan established for the VLA, and this breach was material.

## COUNT VII
## DEFENDANTS BREACHED THE VLA WHEN DEFENDANTS FAILED TO MEET THE IMPLEMENTATION PLAN REQUIRING THAT TESTING AND CERTIFICATION OF VANS WOULD BE AVAILABLE BY APRIL 5TH, 1994.

56. Plaintiff incorporates and re-alleges paragraphs numbers 1. through 43. herein-above as if fully set forth herein.

57. The VLA was breached when Defendants failed to meet the Implementation Plan established for the VLA requiring that testing and certification of VANs would be available by April 4th, 1994, and this breach was material.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests: (a) that the Court declare that Defendants are in material breach of their obligations under the VLA; (b) that this Court award Plaintiff a money judgment of $132,543,000, this based on lost profits on an expectancy of an estimated 300,000 vendors interested in conducting electronic business with DoD; (c) alternatively, that this Court award Plaintiff a money judgment of $50,479,00, this based on lost profits on Plaintiff's share of the 124,265 actual vendors whose electronic business with the Defendants was diverted to Activity-specific electronic commerce systems; (d) alternatively, that this Court determine a

fair and reasonable approximation of money damages under the jury verdict method and award this sum to Plaintiff as money damages; and (e) that this Court grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV
District of Columbia Bar Number 456500
September 21st, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: *lawyer@procurement-lawyer.com*

Attorney of record for Plaintiff,
Advanced Logic Resources, Incorporated.

## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that on Thursday, September 21st, 2006 a true and complete copy of this Second Amended Complaint was filed electronically via the Court's Electronic Case Filing System, through which notice of this filing will be sent to:

Domenique Kirchner, Esq.

Electronic Mail: Domenique.Kirchner@usdoj.gov

Attorney of record for Defendants,
United States Department of Defense.