**BEFORE THE ARMED SERVICES**
**BOARD OF CONTRACT APPEALS**

| | | |
|---|---|---|
| Appeal of | ) | |
| | ) | |
| **Advanced Logic Resources Inc.** | ) | |
| | ) | ASBCA No. 52467 |
| | ) | |
| Under Contract No. DCA200-94-H-0015 | ) | |
| | ) | |

**COMPLAINT**

1. Appellant, Advanced Logic Resources Inc. (ALR), a New York corporation, is a provider of electronic commerce products and services to companies engaged in doing electronic business with the United States of America. ALR is currently a Value Added Network (VAN) provider connecting federal contractors to the Department of Defense (DoD) and other federal agencies.

**Background**

2. For the past ten years, DoD has been implementing Electronic Commerce (EC) through the use of Electronic Data Interchange (EDI) in support of its procurement activities. In July 1993, the Deputy Under Secretary of Defense (Acquisition Reform) created a Process Action Team (PAT) to study electronic procurement, and to recommend a system architecture in order to standardize and centralize electronic procurement within DoD. The PAT issued a report dated December 20, 1993.

3. Concurrently with DoD's PAT study, the President of the United States issued a Memorandum on October 26, 1993 entitled "Streamlining Procurement Through Electronic Commerce". This Memorandum urged all agencies of the federal government to implement

electronic commerce in the procurement process. This Memorandum resulted in the passage of the "Federal Acquisition Streamlining Act of 1994" on October 13, 1994. (P.L. 103-355). (41 U.S.C. § 251 et. seq.).

4. The DoD PAT Report of December 20, 1993 identified numerous DoD activities which were using some type of electronic commerce in the procurement process. For example, the Navy was using APADE (Automation of Procurement and Accounting Data Entry); the Air Force was using MADES (Menu Assisted Data Entry System); the Army was using SACONS (Standard Automated Contracting System); and other DoD elements were using various other systems. The PAT report categorized the existing systems into three types: direct connect, network systems and bulletin board. The direct connect systems (SPEDE, DeCA, SPEDI and POPS-D) were used to send data directly between a Government computer and a contractor (referred to as a "Trading Partner"). The bulletin board systems (DABBS, ITABBS, DESC, IBBS, SACONS-EDI, and GATEC) generally provided direct connections between a Government computer and a Trading Partner. The network systems used a value added network (VAN) as the intermediary between a Government computer and a Trading Partner.

5. The December 1993 PAT Report recommended, inter alia, that DoD present a "single face" to industry using a single-point-of-entry for all contractors. This entry point was a Central Contractor Registry (CCR). The "single-face" to industry concept meant that the existing network systems would be consolidated into central DoD hubs, and that the separate direct-connect, bulletin board and other non-network systems would be incorporated into the central DoD hubs; or that the separate systems would be terminated. It also recommended that DoD set up two mega-computer

hubs for all EC transactions and that these DoD hub computers be connected to public and private VANs to exchange EC/EDI transactions between DoD and its contractors. It recommended the use of a single electronic format (ANSI X12) to exchange transactions among the computers. The report included a sample DoD Trading Partner Agreement for contractor use and a sample VAN License Agreement to be used by VAN providers. It recommended that Defense Information Systems Agency (DISA) be the coordinating agency to implement the report.

6. In March 1994 the Assistant Secretary of Defense (C3I) directed that the existing computer gateways, used by the various DoD elements, be transferred to DISA for incorporation into the central DoD hubs.

**The License Agreement**

7. ALR obtained a copy of License Agreement DCA200-94-H-0015, including the Technical Scope of Work and Addendum A. ALR signed the License Agreement on December 9, 1994 and submitted it to the Contracting Officer for review and approval of ALR as a VAN. After review and discussions with ALR concerning its qualifications, the Contracting Officer signed the License Agreement on February 3,1995 (Attachment 1).

8. The term of the original License Agreement was one year with four one-year options. License Agreement DCA200-94-H-0015 with ALR remained in effect until September 17, 1997 when a new License Agreement (DCA200-97-Z-0002) was signed by the Government. This appeal arises solely under the first License Agreement dated February 3,1995 (the "License").

9. The Government also signed License Agreements with other VAN providers.

**<u>Relevant License Provisions</u>**

10. ALR, as a licensed VAN provider, created a VAN and provided VAN services to the Government at no-cost. These services consisted of electronically exchanging business documents and information between the Government and its contractors (Article 1).

11. In exchange for obtaining VAN services at no-cost, the Government agreed to build a computer hub infrastructure for its information, and to give the VANs sole access to its computers, which the Government complied with. These were called the "DoD Hub Gateway" computers, which the Government used to conduct some of its electronic procurement business during the License period.

12. In exchange for obtaining VAN services at no-cost, the Government also agreed that DoD would electronically conduct business with its contractors <u>solely</u> by using fully tested and licensed VAN providers such as ALR. However, the Government also reserved the right for DoD to conduct business by non-electronic means.

13. The License had several provisions implementing the exclusive use of licensed and tested VAN providers to conduct DoD's electronic commerce with its contractors:

a) Addendum A ¶ 2.1 provided that "DoD will require all contractors desiring to electronically conduct business to <u>only</u> do so with a participating, fully tested EDI VAN provider" (Underscoring added).

b) Other License provisions implementing exclusive use of VANs for DoD's electronic commerce required that all electronic transactions between DoD and its commercial contractors would be exchanged via the DoD hubs (Technical Scope of Work, ¶ C.4); that all electronic transactions would be exchanged via the multi-VAN hubs (Addendum A, ¶ 1); and that all contractors conducting electronic commerce with DoD must register through a participating VAN provider (Addendum A, ¶ 1).

14. The License acknowledged that DoD contractors could also conduct business by non-electronic means in accordance with the Federal Acquisition Regulations and other applicable regulations. However, all business conducted by electronic means had to be conducted through a participating VAN such as ALR.

15. Based on the terms of the License, ALR expected that all of DoD's contractors conducting business electronically would be required by DoD to use a licensed and certified VAN provider, and that DoD itself would use those VANs exclusively to conduct business electronically with its contractors. DoD has broadly defined "electronic commerce" as the paperless exchange of business information using electronic data interchange, electronic mail, electronic funds transfer, facsimile, and similar technologies.

<u>Contract Performance</u>

16. Under the License, ALR was expected to charge the contractors, rather than the Government, for its services provided to the Government. Based on a potential market consisting

of hundreds of thousands of DoD contractors conducting business electronically with DoD, and DoD's promise in the License Agreement that such contractors would be required to use a certified and licensed VAN, ALR undertook to setup and operate its VAN.

17. ALR hired personnel to write, develop, test, and implement the software necessary to operate a VAN. ALR bought equipment and entered into contract agreements necessary to operate a VAN. ALR also obtained compliance certifications from DoD for all implementation conventions supported by the Government. ALR was one of only three VANs during 1994-1997 to obtain certification in all conventions supported by the Government.

18. During the term of the License, ALR provided all the services required by the License at no cost to the Government.

19. However, DoD, in the conduct of its electronic business, did not use and did not require its contractors to use certified and licensed VAN providers. The number of DoD contractors who utilized certified and licensed VAN providers, including ALR, was minuscule during the period of the License. The lack of customers utilizing ALR'S VAN services was caused by the acts and omissions of the Government set forth below.

**Government Breach of the License Agreement**

20. Between February 3, 1995 and September 17, 1997, the Government breached the License in the following material respects:

a) All electronically-conducted business between DoD and its contractors was not exchanged through participating VANs. Despite the clear and unequivocal terms of the License, many elements of DoD continued to electronically conduct business directly with its contractors through the use of non-licensed VAN Providers, direct connections, bulletin boards, facsimile machines, modems, Impact cards, credit cards, and similar technologies, rather than through licensed VAN providers.

b) Despite the clear and unequivocal terms of the License, DoD did not require its contractors, who electronically conducted business, to use only licensed and certified VAN providers such as ALR. Instead, DoD allowed, permitted and encouraged its electronic contractors to circumvent the VAN providers, through the use of non-licensed VAN Providers, direct connections, bulletin boards, facsimile machines, modems, Impact cards, credit cards, and similar technologies.

c) DoD did not require all contractors electronically conducting business with DoD to register through a participating VAN provider such as ALR.

21. These breaches by the Government resulted in substantial damage to ALR as a participating VAN provider. ALR filed a claim, duly certified under the Contract Disputes Act, on July 21,1999, for the value of its services in the amount of $8,394,110,175. The Contracting Officer denied the claim by Final Decision dated 25 October 1999. A Notice of Appeal was filed with this Board on November 19,1999.

**ALR's Damages**

22. Value of Services. The License provided that ALR would not charge the Government for its services. However, the Government breached the License by conducting DoD-to-contractor electronic commerce outside the VAN network; and by failing to require that its contractors register through and use only VAN providers such as ALR to conduct electronic commerce. Accordingly, ALR is entitled to recover the value of its VAN services provided to the Government.

23. The License Agreement required that ALR provide 2 basic services: procurement transactions and CALS data. The 1993 PAT report stated that there were 12 million small purchases made by DoD in FY 92. Thus, ALR was required to provide a network capable of receiving from DoD at least 12 million purchase requests, although no specific volume was guaranteed, so that they could be distributed to ALR's customers. This volume of purchase transactions would require a transmission capability of 3,200,000 kilocharacters/day.

24. The CALS (Continuous Acquisition and Life Cycle Support) data consisted primarily of drawing data. One DoD organization (JEDMICS) informed ALR that it electronically transmitted about 55,000 drawings per day to its contractors. This volume of drawings would require a transmission capability of 25,860,786 kilocharacters/day.

25. The total required transmission capability which ALR needed to receive just these two types of transactions from DoD was 29,060,786 kilocharacters/day. (This calculation does not include many other types of transactions received and sent to DoD each day by a VAN). The

Government's Electronic Commerce Handbook recognizes that VANs usually charge $0.35/kilocharacter for processing transactions; and ALR provided this capability to DoD for the 957 days of its License. Accordingly, ALR provided VAN capability to the Government worth $9,733,910,270.70 (29,060,786 kilocharacters/day x 957days x .35/kilocharacter).

WHEREFORE, Appellant requests that this Board enter judgment against Respondent in the amount of $9,733,910,270.70 plus Contract Disputes Act interest from July 21, 1999; plus such other relief as this Board deems appropriate.

Respectfully submitted,

Peter M. Kilcullen
Kilcullen, Wilson & Kilcullen
1800 K Street, N.W.
Suite 300
Washington, D.C. 20006
(202) 296-5700
(202) 296-5706 Fax

Attorney for Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December 1999, a true and accurate copy of the foregoing **COMPLAINT** was sent by first class mail, postage prepaid to the following party:

Robert R. Goff, Jr.
Defense Information Technology Contracting Organization (DITCO)
Office of Counsel
2300 East Drive
Scott Air Force Base, IL 62225

Peter M. Kilcullen, Esquire

BEFORE THE
ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of<br>Advanced Logic Resources, Inc.<br><br>Under Agreement No. DCA200-94-H-0015 | )<br>)<br>)<br>)<br>) | ASBCA No. 52467 |

**ANSWER**

The Defense Information Systems Agency, Defense Information Technology Contracting Office (DITCO) ("Respondent") submits the following answer in like-numbered paragraphs to the Appellant's Complaint. Allegations not specifically admitted are generally denied.

1. Denies the allegations contained in paragraph 1 for lack of knowledge or information as to the truth of the matters asserted.

2. Admits the first sentence. Admits the remainder of the allegations of paragraph 2 to the extent supported by the Report cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 2.

3. Admits the allegations of paragraph 3 to the extent supported by the Memorandum cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 3.

4. Admits the allegations of paragraph 4 to the extent supported by the Report cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 4.

5. Admits the allegations of paragraph 5 to the extent supported by the Report cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 5.

6. Denies the allegations contained in paragraph 6 for lack of knowledge or information as to the truth of the matters asserted.

7. Admits the allegations of paragraph 7 to the extent supported by the Agreement cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 7.

8. Admits the allegations of paragraph 8 to the extent supported by the two Agreements cited, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 8.

9. Admits.

10. Denies the allegations contained in paragraph 10 for lack of knowledge or information as to the truth of the matters asserted.

11. Admits the allegations of paragraph 11 to the extent supported by the Agreement cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 11.

12. Denies.

13. Admits the allegations of paragraph 13 to the extent supported by the Agreement cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 13.

14. Admits the allegations of the first sentence of paragraph 14 to the extent supported by the Agreement cited, which is the best evidence of its contents. Denies the second sentence of paragraph 14.

15. Denies the allegations of the first sentence of paragraph 15 for lack of knowledge or information as to the truth of the matters asserted. Denies the remainder of the allegations in paragraph 15.

16. Admits the allegations of the first sentence of paragraph 16 to the extent supported by the Agreement cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 16. Denies the allegations of the second sentence of paragraph 16 for lack of knowledge or information as to the truth of the matters asserted.

17. Denies the allegations of paragraph 17 for lack of knowledge or information as to the truth of the matters asserted.

18. Admits.

19. Denies the allegations of paragraph 19 for lack of knowledge or information as to the truth of the matters asserted.

20. Denies.

21. Denies the allegations of the first sentence of paragraph 21. Admits the remainder of the allegations in paragraph 21 to the extent supported by the documents cited; otherwise denies the remainder of the allegations cited contained in paragraph 21.

22. Admits the first sentence of paragraph 22. Denies the remainder of the allegations in paragraph 22.

23. Denies the allegations of paragraph 23 for lack of knowledge or information as to the truth of the matters asserted.

24. Denies the allegations of paragraph 24 for lack of knowledge or information as to the truth of the matters asserted.

25. Denies the allegations of paragraph 25 for lack of knowledge or information as to the truth of the matters asserted.

**AFFIRMATIVE DEFENSE**

26. In the event that the Board finds that the misinterpretation of the Agreement was based, in whole or in part, by actions of individuals other than the Contracting Officer assigned to the Agreement, no individuals other than the authorized Contracting Officer assigned to the Agreement were authorized to modify the terms of the Agreement. The Respondent is not liable for the unauthorized acts of its agents.

27. The Appellant waived all rights to any compensation under the express terms of Agreement DCA200-H-94-0015. ARTICLE 1. LICENSE GRANT - DECCO/RPPS (DEC 1993) states that:

> The EDI VAN Provider hereby provides the Government with the right to have access to the use of its EDI and Value-Added Network Services at no-cost to the Government for the purpose of exchanging business documents and information with individuals and organizations conducting business with the Government throughout the DOD Hub Gateway Computers. (Emphasis added).

In the second paragraph of ARTICLE 2. LICENSE TERM – DECCO/RPPS (OCT 1992), it states that:

> At the time of each annual review, the Government will review any changes to the Technical Scope of Work as well as review all terms and conditions contained in the License Agreement including the no-cost provision. If it is determined to be in the Government's best interests, EDI VAN services required after Year One may be procured on a competitive basis in accordance with the Federal Acquisition Regulation. (Emphasis added).

The license agreement goes on to state in ARTICLE 3. PAYMENT – DECCO/RPPS (OCT 1992) that:

> In consideration for the Electronic Data Interchange (EDI) Value Added Network (VAN) provided by the EDI/VAN provider and the access to the DOD Hubs located at up to two locations for operations and disaster recovery purposes, provided by the Government, as described in the Technical Scope of Work, there will be no monetary charge to either party. (Emphasis added.)

28. The Appellant waived all rights to any compensation by entering into Agreement DCA200-H-94-0015 while it knew that the Department of Defense (DoD) had been and was continuing to conduct various forms of electronic commerce between contractors and DoD outside of the DoD Gateways.

29. The Appellant is barred from seeking any compensation against Agreement DCA200-H-94-0015 since this Agreement was completed in 1997 upon execution of the follow-on Agreement DCA200-97-Z-0002.

**PRAYER FOR RELIEF**

Respondent denies that Appellant is entitled to the relief requested, or any relief whatsoever. WHEREFORE, Respondent requests that the Appeal be dismissed, and that the Respondent be granted such other and further relief as the Board may deem just and proper.

Respectfully submitted,

Dated: January 14, 2000

ROBERT R. GOFF
Attorney for Respondent

DISA-DITCO/D01DT
2300 East Drive
Bldg. 3600
Scott AFB IL 62225-5406
Phone: 618-229-9445
Fax: 618-229-9755

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Answer to Appellant's Complaint was transmitted by U.S. Mail on January 18, 2000.

Edward S. Adamkewicz (Original and one copy)
Recorder
Armed Services Board of Contract Appeals
Skyline Six, 7th Floor
5109 Leesburg Pike
Falls Church, VA 22041-3208
Phone: 703-756-8502
Fax: 703-756-8535

Peter M. Kilcullen (One copy)
Attorney for Appellant
Kilcullen, Wilson & Kilcullen
1800 K Street, NW
Suite 300
Washington, DC 20006
Phone: 202-296-5700
Fax: 202-296-5706

Dorothy M. Forster
Dorothy M. Forster
Paralegal Specialist

**BEFORE THE ARMED SERVICES
BOARD OF CONTRACT APPEALS**

| | | |
|---|---|---|
| Appeal of | ) | |
| | ) | |
| **Advanced Logic Resources Inc.** | ) | |
| | ) | ASBCA No. 52790 |
| | ) | |
| Under Contract No. DCA200-94-H-0015 | ) | |
| | ) | |

**COMPLAINT**

1. Appellant, Advanced Logic Resources Inc. (ALR), a New York corporation, is a provider of electronic commerce products and services to companies engaged in doing electronic business with the United States of America. ALR is currently a Value Added Network (VAN) provider connecting federal contractors to the Department of Defense (DoD) and other federal agencies.

**Background**

2. ALR has previously filed a Complaint in ASBCA No. 53467 under this same License Agreement which sets forth the background of the License Agreement and DoD's VAN program. ALR obtained a copy of License Agreement DCA200-94-H-0015, including the Technical Scope of Work and Addendum A. ALR signed the License Agreement on December 9, 1994 and submitted it to the Contracting Officer for review and approval of ALR as a VAN. After review and discussions with ALR concerning its qualifications, the Contracting Officer signed the License Agreement on February 3,1995.

3. The term of the original License Agreement was one year with four one-year options. License Agreement DCA200-94-H-0015 with ALR remained in effect until September 17, 1997 when

a new License Agreement (DCA200-97-Z-0002) was signed by the Government. This appeal arises solely under the first License Agreement dated February 3,1995 (the "License").

**Relevant License Provisions**

4. ALR, as a licensed VAN provider, created a VAN and provided VAN services to the Government at no-cost. These services consisted of electronically exchanging business documents and information between the Government and its contractors (Article 1).

5. Paragraph I. USER DOCUMENTATION provided as follows:

> The EDI VAN Provider must provide to the DoD Technical Representative all user documentation concerning the EDI VAN Provider services provided to other basic electronic mail box subscribers conducting electronic commerce with the DoD via this agreement. The EDI VAN Provider must provide timely updates of such documentation when modified. All such materials will be returned by DoD to the EDI VAN Provider upon expiration or termination of this agreement

**Government Breach of the License Agreement**

6. As required by Paragraph I., ALR provided computer code and documentation to the following organizations within the DISA infrastructure: The Program Management Office (PMO) in Falls Church, VA, the Compliance Certification Facility (CCF) in Columbus Ohio, and the Joint Interoperability Test Command (JITC) at Fort Huachuca, AZ. All computer code and documentation was clearly marked with an ALR copyright notice.

7. Further, at the insistence of DISA and outside the requirements of the License, ALR provided the design of its fault-tolerant multi-node architecture to DISA. ALR subsequently

discovered that this architecture was appropriated by DISA, without the consent or approval of ALR, in the design of its network under the second License Agreement.

8. On or about February 12, 1999, ALR discovered that JITC had been using ALR's program to perform testing with other VAN Providers during 1995,1996 and 1997, without having obtained a release or grant of reproduction rights to ALR's code. ALR further discovered that DISA offices had removed ALR's copyright notices and had been distributing ALR's code to ALR's competitors.

9. ALR also discovered that ALR's Quality Control Manual, containing classified inspection and calibration data for military weapons systems, had also been misused by DISA components.

10. In December 1999, ALR demanded the return of its software code and documentation under the expired License Agreement. DISA replied that it was unable to return the information, as it was no longer in possession of ALR's data.

11. Respondent breached the terms of the License Agreement by misappropriating the software and documentation provided by ALR, and by providing such information to competitors of ALR

12. The breach and misappropriation by the Government resulted in substantial damage to ALR as a participating VAN provider. ALR filed a claim, duly certified under the Contract

Disputes Act, on December 15,1999, in the amount of $18,093,100,000. The Contracting Officer denied the claim by Final Decision dated 1 March 2000. A Notice of Appeal was filed with this Board on May 22, 2000.

**ALR's Damages**

13. ALR suffered damages as follows: the taking of ALR's Xpediter software in the amount of $93,000,000; the unauthorized of ALR's network design specification in the amount of $8,000,000,000; the theft and unauthorized use of software code in the amount of $10,000,000,000; and the non-return of code and documentation in the amount of $100,000.

WHEREFORE, Appellant requests that this Board enter judgment against Respondent in the amount of $18,093,100,000, plus Contract Disputes Act interest from December 15, 1999; plus such other relief as this Board deems appropriate.

Respectfully submitted,

Peter M. Kilcullen
Bell, Boyd & Lloyd
1615 L Street, N.W.
Suite 1200
Washington, D.C. 20036
(202) 955-6839
(202) 463-0678 Fax

Attorney for Appellant

June 23, 2000

## CERTIFICATE OF SERVICE

I hereby certify that on this 23 day of June, 2000, a true and accurate copy of the foregoing **COMPLAINT** was sent by first class mail, postage prepaid to the following party:

Robert R. Goff, Jr.
Defense Information Technology Contracting Organization (DITCO)
Office of Counsel
2300 East Drive
Scott Air Force Base, IL 62225

Peter M. Kilcullen, Esquire

**BEFORE THE**
**ARMED SERVICES BOARD OF CONTRACT APPEALS**

| | | |
|---|---|---|
| Appeal of<br>Advanced Logic Resources, Inc.<br><br>Under Agreement No. DCA200-94-H-0015 | ) ) ) ) ) | ASBCA No. 52790 |

**ANSWER**

The Defense Information Systems Agency, Defense Information Technology Contracting Office (DITCO) ("Respondent") submits the following answer in like-numbered paragraphs to the Appellant's Complaint. Allegations not specifically admitted are generally denied.

1. Denies the allegations contained in paragraph 1 for lack of knowledge or information as to the truth of the matters asserted.

2. Admits that ALR has previously filed a Complaint in ASBCA No. 52467; otherwise denies the remainder of sentence 1. Admits the remainder of the allegations of paragraph 2 to the extent supported by the License Agreement cited, which is the best evidence of its contents.

3. Admits the allegations of paragraph 3 to the extent supported by the License Agreement, which is the best evidence of its contents; otherwise denies the allegations of paragraph 3.

4. Denies the allegations contained in paragraph 4 for lack of knowledge or information as to the truth of the matters asserted.

5. Admits the allegations of paragraph 5 to the extent supported by the Technical Scope of Work attached to the License Agreement cited, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 5.

6. Denies the allegations contained in paragraph 6 for lack of knowledge or information as to the truth of the matters asserted.

7. Denies the allegations contained in paragraph 7 for lack of knowledge or information as to the truth of the matters asserted.

8. Denies the allegations contained in paragraph 8 for lack of knowledge or information as to the truth of the matters asserted.

9. Denies the allegations contained in paragraph 9 for lack of knowledge or information as to the truth of the matters asserted.

10. Admits the allegations contained in paragraph 10 to the extent supported by ALR's December 15, 1999, letter, which is the best evidence of its content.

11. Denies.

12. Denies the allegations contained in sentence 1. Admits the remainer of the allegations of paragraph 12 to the extent supported by the documents cited, which are the best evidence of their contents.

13. Denies the allegations of paragraph 13 for lack of knowledge or information as to the truth of the matters asserted.

## AFFIRMATIVE DEFENSE

14. In the event that the Board finds that the misinterpretation of the Agreement was based, in whole or in part, by actions of individuals other than the Contracting Officer assigned to the Agreement, no individuals other than the authorized Contracting Officer assigned to the Agreement were authorized to modify the terms of the Agreement. The Respondent is not liable for the unauthorized acts of its agents.

15. The Appellant is barred from seeking any compensation against Agreement DCA200-94-H-0015 since this Agreement was completed in 1997 upon execution of the follow-on Agreement DCA200-97-Z-0002.

16. The Appellant waived all rights to any compensation under the express terms of Agreement DCA200-H-94-0015. ARTICLE 1. LICENSE GRANT - DECCO/RPPS (DEC 1993) states that:

> The EDI VAN Provider hereby provides the Government with the right to have access to the use of its EDI and Value-Added Network Services at no-cost to the Government for the purpose of exchanging business documents and information with individuals and organizations conducting business with the Government throughout the DOD Hub Gateway Computers. (Emphasis added).

In the second paragraph of ARTICLE 2. LICENSE TERM – DECCO/RPPS (OCT 1992), it states that:

> At the time of each annual review, the Government will review any changes to the Technical Scope of Work as well as review all terms and conditions contained in the License Agreement including the no-cost provision. If it is determined to be in the Government's best interests, EDI VAN services required after Year One may be procured on a competitive basis in accordance with the Federal Acquisition Regulation. (Emphasis added).

The license agreement goes on to state in ARTICLE 3. PAYMENT – DECCO/RPPS (OCT 1992) that:

> In consideration for the Electronic Data Interchange (EDI) Value Added Network (VAN) provided by the EDI/VAN provider and the access to the DOD Hubs located at up to two locations for operations and disaster recovery purposes, provided by the Government, as described in the Technical Scope of Work, there will be no monetary charge to either party. (Emphasis added.)

17. Paragraph 6 of Appellant's claim states that "all computer code and documentation were clearly marked with an ALR copyright notice." Additionally, paragraph 8 of Appellant's claim alleges that "DISA offices had removed ALR's copyright notices." The license agreement in ARTICLE 6. NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT - FAR 52.227-2 (APR 1984) states that:

(a) The EDI VAN Provider shall report to the Contracting Officer, promptly and in reasonable written detail, each notice or claim of patent or copyright infringement based on the performance of this contract of which the EDI VAN Provider has knowledge.

(b) In the event of any claim or suit against the Government on account of any alleged patent or copyright infringement arising out of the performance of this contract or out of the use of any supplies furnished or work or services performed under this contract, the EDI VAN Provider shall furnish to the Government, when requested by the Contracting Officer, all evidence and information in possession of the EDI VAN Provider pertaining to such suit or claim. Such evidence and information shall be furnished at the expense of the Government except where the EDI VAN Provider has agreed to indemnify the Government.

The Appellant was on notice by Article 6 of the License Agreement that it had the responsibility to promptly report to the Contracting Officer any alleged copyright infringement. Appellant has not provided any documentation that it reported any alleged copyright or patent violations to the Contracting Officer prior to submission of an uncertified claim, dated May 14, 1999. Hence, Appellant's failure to provide timely notice in accordance with the VAN License agreement, and ALR's subsequent execution of the 1997 VAN License agreement waived any and all claims with regard to its software and documentation.

**PRAYER FOR RELIEF**

Respondent denies that Appellant is entitled to the relief requested, or any relief whatsoever. WHEREFORE, Respondent requests that the Appeal be dismissed, and that the Respondent be granted such other and further relief as the Board may deem just and proper.

Respectfully submitted,

Dated: July 26, 2000

JO ANN W. MELESKY
Attorney for Respondent

DISA-DITCO/D01DT
2300 East Drive
Bldg. 3600
Scott AFB IL 62225-5406
Phone: 618-229-9782
Fax: 618-229-9755

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Answer to Appellant's Complaint was transmitted by U.S. Mail on July 26, 2000.

Edward S. Adamkewicz (Original and one copy)
Recorder
Armed Services Board of Contract Appeals
Skyline Six, 7th Floor
5109 Leesburg Pike
Falls Church, VA 22041-3208
Phone: 703-756-8502
Fax: 703-756-8535

Peter M. Kilcullen (One copy)
Attorney for Appellant
Bell, Boyd & Lloyd
1615 L Street, NW
Suite 1200
Washington, DC 20036-5610
Phone: 202-466-6300
Fax: 202-463-0678

Dorothy M. Forster
Dorothy M. Forster
Paralegal Specialist

Advanced Logic Resources, Inc.
244 Mill Rd.
Yaphank NY 11980
(516) 924-1700 (516) 924-1799 Fax
edi@alr.net http://www.alr.net

July 21, 1999

Defense Information Systems Agency
Defense Information Technology
Contracting Organization
2300 East Drive
Scott Air Force Base, IL 62225-5406

Attention: Debra D. Santoro
Contracting Officer

Dear Ms. Santoro:

Attached is claim which we are submitting on behalf of Advanced Logic Resources, Inc. requesting compensation of $8,394,110,175.00 for non-compliance on the part of the United States of America under License DCA200-94-H-0015.

This submission is being made in accordance with Federal Acquisition Regulation 52.233-1.

Very truly yours,

ADVANCED LOGIC RESOURCES, INC.

James Edwardson
CEO

JE/gk

CERTIFIED MAIL -
RETURN RECEIPT REQUESTED

Advanced Logic Resources, Inc.

As per ARTICLE 12 of LICENSE AGREEMENT DCA200-94-H-0015, ALR, Incorporated is making a claim for compensation from the United States of America as per FAR 52.233-1.

This claim is for the period of time from 2/95 to 9/97, which was the time that this license was in effect.

Advanced Logic Resources, Inc. (hereafter called ALR) has provided services free of charge meeting the requirements set by the United States of America (hereafter called Government) in LICENSE AGREEMENT DCA200-94-H-0015. ALR has met and certified for all standards and requirements set by the Government at no cost to the government as per ARTICLE 3.

The Government has not complied with the following portions of this agreement:

Scope of work

*2.1 Contractor Use of VAN Services*

*DoD will require all contractors desiring to electronically conduct business to only do so with a participating, fully tested EDI VAN Provider. Any contractor may also exchange transactions by other means (i.e., not electronic) in accordance with the FAR and other applicable regulations. DoD will require registered vendors to exchange all electronic transactions via a participating EDI VAN Provider. DoD activities participating in this approach will be phased into it in accordance with a DoD-wide implementation plan*

The Government by taking the following actions has not complied with this clause. The Government conducted business electronically directly to contractors over the Internet with web pages such as the DLA Electronic Mall and the Navy Electronic Commerce Online (NECO), and directly using modems and faxes such as the DLA dial up BBS systems or GSA Advantage system. These are only some prime examples. The conducting of business electronically in violation of clause 2.1 of the Scope of Work was very wide spread. In fact almost all contracting actions involved direct electronic contracting in violation of clause 2.1 of the Scope of Work using faxes in the contracting process.

The Government has not complied with the terms of this license and now has completely abandoned any intention of complying with the terms of the license. ALR provided services as specified in this license and other government documents. ALR intended to be compensated for these services by receiving fees from the contractors which would be required to pay for VAN service in order to exchange electronic messages to the government. Because the Government breeched the contract, by not complying with clause 2.1 of the Scope of Work, only a very small number of the 700,000 contractors with active CAGE codes paid for VAN services. ALR makes a claim for compensation for the VAN services which were provided to the Government free of charge exclusively for Government use under this license, in return for compliance with clause 2.1 of the Scope of work, in the amount of $8,394,110,175.00.

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and I am authorized to certify the claim on behalf of the contractor.

James Edwardson CEO
Advanced Logic Resources, Inc.
Dated: July 21, 1999

244 Mill Rd, Yaphank NY 11980

A 105

Advanced Logic Resources. Inc.
2[illegible] ill RD
Yapnank NY

15 December 1999

Defense Information Systems Agency
Defense Information Technology Contracting Organization
2300 East Dr
Scott Air Force Base, IL 62225-5406
Att Ms. Santoro

Dear Ms. Santoro;

In response to your Email of 9 December 1999 which stated

*"The Government does not have the software and documentation and, therefore, can not return it. You may file a claim in accordance with FAR 52.233-1, Disputes, contained at Article 12 of VAN License Agreement Number DCA200-94-H-0015."*

Attached is a claim in accordance with FAR 52.233-1, Disputes.

12/15/1999

James Edwardson CEO
Advanced Logic Resources, Inc

As per ARTICLE 12 of LICENSE AGREEMENT DCA200-94-H-0015, ALR, Incorporated is making a claim for compensation from the United States of America as per FAR 52.233-1. This claim is for the period of time from 2/95 to 9/97, which was the time that this license was in effect.

Advanced Logic Resources, Inc. (hereafter called ALR) has provided Computer code, and documentation, meeting the requirements set by the United States of America (hereafter called Government) in LICENSE AGREEMENT DCA200-94-H-0015. ALR has met and certified for all standards and requirements set by the Government.

ALR has provided computer code and documentaion to the following organizations within the DISA infrastructure.

The Program Management Office (PMO) in Falls Church VA.

2 The Compliance Certification Facility (CCF) on Columbus OH.

3 The Joint Interoperability Test Command (JITC) at Fort Huachuca, AZ

The Government has not complied with the following portions of this agreement:

*"Scope Of Work I. USER DOCUMENTATION*
*The EDI VAN Provider must provide to the DoD Technical Representative all user documentation concerning the EDI VAN Provider services provided to other basic electronic mailbox subscribers conducting electronic commerce with the DoD via this agreement. The EDI VAN. Provider must provide timely updates of such documentation when modified. All such materials will be returned by DoD to the EDI VAN Provider upon the expiration or termination of this agreement."*

The Government by taking the following actions has not complied with this clause. The Government did not return any of the computer code or documentation that was supplied to it under this Agreement. Furthermore all of the documentation and computer code supplied to the Government was clearly marked with an ALR copyright notice. ALR found that JITC was using code that was identical to the code that ALR provided to CCF under the terms of this agreement with the exception that the ALR copyright notice was removed. ALR has verified that Code supplied by ALR to CCF was used by JITC in their test process with other VANS during 1995, 1996 and 1997. During this time period JITC distributed code that was the copyrighted property of ALR to VANs who were ALR competitors.

Much to ALR's objection DISA insisted that ALR provide documentation on the design of its fault tolerant multi-node architecture. The specifications and requirements for the succeeding VAN Licence Agreement was largly a copy of the architecture that ALR provided to DISA under this Agreement.

The Government has not complied with the terms of this license and now has completely abandoned any intention of complying with the terms of the license. The Government has also refused to investigate the theft and interstate transport of ALR copyrighted computer code and subsequent unauthorized use of ALR computer code and system design. ALR makes a claim for compensation for the non return of ALR property, for the unauthorized use of ALR property, and for the unauthorized distribution of proprietary ALR computer code and trade secrets to competitors of ALR. ALR seeks a damage claim of $18,093,100,000.00.

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and I am authorized to certify the claim on behalf of the contractor.

12/15/1999

James Edwardson CEO
Advanced Logic Resources. Inc

244 Mill Rd, Yaphank NY 11980